(68 App. Div. 310.)

### TYSON v. JOSEPH H. BAULAND CO.

(Supreme Court, Appellate Division, Second Department. January 17, 1902.)

1. FALSE IMPRISONMENT—SPECIAL OFFICER—QUESTION FOR JURY.

The proprietor of a department store, employing a special officer to protect its customers, requested his appointment as special patrolman, pursuant to Greater New York Charter, c. 378, § 308, which provides for the appointment of special patrolmen, and detail for special duty, at the request of any person or corporation who shall pay for their services, to be subject to the orders of the chief of police, and possess all the powers and discharge all the duties of a regular patrolman. The proprietor and the officer both testified that the latter's instructions were to submit all cases of shoplifting to the former before making an arrest. *Held*, in an action by one arrested by the officer for stealing from a customer, against the proprietor for false imprisonment, that the question whether the officer acted under his employment by the proprietor was for the jury.

2. SAME—SUFFICIENCY OF EVIDENCE.

A special officer employed by a department store, on the complaint of customer, arrested plaintiff, in whose possession property of the customer was found, and on the way to the station he turned her over to a policeman, and he and the proprietor took no further step in the matter, though the customer made a sworn complaint and conducted the prosecution, but the grand jury failed to indict. In an action against the three for false imprisonment and malicious prosecution, the case was dismissed against the customer after the evidence was in, and a verdict was rendered against the two others. *Held*, that a verdict against the proprietor for malicious prosecution was not justified by the evidence, and as it did not show on which cause of action it was based, and might have been based on malicious prosecution, it was without warrant of law.

Goodrich, P. J., dissenting.

Appeal from trial term, Kings county.

Action by Eliza Tyson against Joseph H. Bauland Company and another. From a judgment for plaintiff, defendant Joseph H. Bauland Company appeals. Reversed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

John L. Wilkie (William B. Goodwin, on the brief), for appellant. Charles L. Woody, for respondent.

HIRSCHBERG, J. The appellant is a corporation, and the proprietor of a large department store in Brooklyn. The respondent was shopping in the store on the 22d day of August, 1898, and a part of the time was at the shirt-waist counter. A Mrs. Gillin was also shopping at the same counter, having a satchel in which, among other articles, she claims there was $25 in currency. Mrs. Gillin missed her satchel, and reported the fact to a floorwalker, by whom she was advised to station herself at the main exit door of the building, and see if any one attempted to leave the place with her satchel. Meanwhile a strange woman, presumably the thief, accosted the respondent, and handed her the satchel, with the request that she give it to the owner, who she said would be found at the door. At the door Mrs. Gillin descried the satchel in the respondent's hands, and, claiming and opening it, found the money gone, whereupon she complained to one O'Reilly, a special police officer in the appellant's employ, by whom the respondent was at once arrested, and by whose instrumentality she was taken to a police station. There Mrs. Gillin made a written verified complaint charging the respondent with the crime of grand larceny. An examination was afterwards had, and the respondent held in bail to await the action of the grand jury, before whom both Mrs. Gillin and the respondent subsequently appeared and testified, but by whom no indictment was found. This action was thereafter commenced for damages against Mrs. Gillin, O'Reilly, and the appellant. At the close of the case the complaint was dismissed by the court as to Mrs. Gillin, and the jury returned a verdict against the other defendants, from the judgment entered on which the corporation alone appeals. There was some dispute as to whether the amount of money in the satchel was $25 or $20, and a finding either way could be supported. The facts were colored in various particulars by the witnesses, and were qualified by other facts not deemed material to a clear understanding of the law involved.

The complaint contains but a single count, which might be either for false imprisonment or malicious prosecution. It was treated on the trial as a complaint for both causes of action, and the learned counsel for the respondent state in their brief that "this is an action for both malicious prosecution and false imprisonment." At the commencement of the trial the appellant moved that the plaintiff elect which cause of action she intended to pursue, but the court refused to require her then so to do, and no exception was taken to the ruling. Such election was not required at any stage of the case, nor was the motion renewed. On the contrary, at the close of the case the appellant moved to dismiss the entire cause of action, "whatever it may be," and each cause of action

separately, all which motions were denied and exceptions taken. The charge to the jury is not returned, and the necessary inference is that a recovery was allowed if, in the opinion of the jury, the facts supported either cause of action. The two causes of action, however, could not be combined in a single count (section 483, Code Civ. Proc.), although they may be united in the same complaint (Marks v. Townsend, 97 N. Y. 590, and cases cited). By not demurring the appellant must be deemed to have waived the defect, and was probably not entitled to the election at the commencement of the trial as a strict matter of right. As it must be assumed from the record that both causes of action were submitted to the jury, and the verdict may have been founded on either, the judgment appealed from cannot be sustained unless the proof establishes both causes of action.

The appellant's connection with the false imprisonment must arise, if at all, from the facts that the occurrence took place upon its premises and the arrest was made by its employé. It is claimed by the appellant that O'Reilly was not its employé in this transaction, or, at least, was not acting within the scope of such employment at the time, but that he was discharging his official duty as a special patrolman. He was appointed by virtue of the provisions of section 308 of the Greater New York charter (chapter 378, Laws 1897), the material portions of which are as follows:

"Special patrolmen, appointed in pursuance of law, may be dismissed by order of the police board; and while acting as such special patrolmen shall possess the powers, perform the duties, and be subject to the orders, rules and regulations of the police department· in the same manner as regular patrolmen. Every such special patrolman shall wear a badge, to be prescribed and furnished by the police board. * * * The police board, whenever expedient, may on the application of any person or persons, corporation or corporations, showing the necessity therefor, detail regular patrolmen of the police force, or appoint and swear any number of special patrolmen to do special duty at any place in the city of New York upon the person or persons, corporation or corporations by whom the application shall be made, paying, in advance, such regular or special patrolmen for their services, and upon such regular or special patrolmen, in consideration of their appointment, signing an agreement in writing releasing and waiving all claim whatever against the police department and the city of New York for pay, salary or compensation for their services and for all expenses connected therewith; regular patrolmen so detailed shall be paid at the same rate as provided for patrolmen in this act; but the regular or special patrolmen so appointed shall be subject to the orders of the chief of police and shall obey the rules and regulations of the police department and conform to its general discipline and to such special regulations as may be made, and shall wear such dress or emblems as the department may direct, and shall during the term of their holding appointment possess all the powers and discharge all the duties of the police force, applicable to regular patrolmen. The special patrolmen so appointed may be removed at any time by the police board without assigning cause therefor, and nothing in this section contained shall be construed to constitute such special patrolmen members of the police force, or to entitle them to the privilege of the regular members of the force, or to receive any salary, pay, compensation or moneys whatever from the said police department or the city of New York, or to share in the police pension fund."

The contention of the appellant is that the effect of O'Reilly's appointment under this section was to make him altogether a public

officer, and not at all the company's servant, notwithstanding his duties were confined to the territory of the company's property, and he was wholly under the company's pay; and the cases of Wells v. Market Co., 19 D. C. 385; Hershey v. O'Neill (C. C.) 36 Fed. 168; Improvement Co. v. Steinmeier, 72 Md. 313, 20 Atl. 188, 8 L. R. A. 846; Dempsey v. Railroad Co., 146 N. Y. 290, 40 N. E. 867; and Woodhull v. City of New York, 150 N. Y. 450, 44 N. E. 1038,—are cited in support of the contention. It must be admitted that the question is not free from doubt, but I am inclined to the opinion that upon the facts of the case the jury might have properly found that the act of O'Reilly was done in the appellant's service, and pursuant to an employment to which his public appointment was but incidental. It would seem that O'Reilly was in the appellant's service as a special officer before his appointment by the police department, as is shown by the letter written by the appellant to the board of public commissioners, stating that "we would like to have Mr. Thomas O'Reilly appointed as a special officer. He has been in our employ as a special officer, and we desire to continue him as such." The duty of protecting its customers is asserted on the appellant's part in its answer, and, within reasonable bounds, is certainly enjoined by the law. The voluntary assumption of such duty, as stated in the answer, is broad enough to cover cases of thieving from its patrons. O'Reilly testified that his instructions from the appellant were to submit all cases of shoplifting to its president before taking action, and the latter testified that he had instructed O'Reilly to submit every matter to him before making any arrests. If the arrest in this instance was therefore false, and one for which O'Reilly himself could be cast in damages, and if it was within the terms of his general employment, independently of his position as a special patrolman, it cannot be said as matter of law that he was not acting in the appellant's employ, within the law of master and servant, at the time of the arrest, however a fuller exposition of the facts may present the question upon a new trial. In the much-criticised case of Mali v. Lord, 39 N. Y. 381, 100 N. E. 448, the clerk called a policeman into the store to make the arrest, and it was held that the employer was not liable, inasmuch as the act of the clerk was without authority. Had the employer himself called the policeman in, there would have been no doubt of his liability, and it is not easy to see any difference in principle between summoning an officer for the occasion and keeping him on hand until the emergency arises. The statement that no arrests should be made until first reported is subject to the usual question of credibility attaching to interested witnesses, while disobedience of orders on the part of the employé, if the relation of master and servant exist, has been held in a recent case to be no defense, under certain circumstances and conditions. See Manufacturing Co. v. Gorsline, 63 App. Div. 517, 71 N. Y. Supp. 619. The character in which an act is done, and whether or not within the scope of a given employment, is generally a question of fact, and it has been held that, where a private agent is clothed with public authority to make arrests in order the better to protect his principal's authority or rights, the latter is not relieved from liability for a false

imprisonment committed by the former. Gillingham v. Railroad Co., 35 W. Va. 588, 14 S. E. 243, 14 L. R. A. 798, 29 Am. St. Rep. 827, 834. See, also, Krulevitz v. Eastern R. Co., 143 Mass. 228, 9 N. E. 613; Dickson v. Waldron, 135 Ind. 507, 521, 34 N. E. 506, 35 N. E. 1, 24 L. R. A. 483, 488, 41 Am. St. Rep. 440; Railway Co. v. Hackett, 58 Ark. 381, 24 S. W. 881. I see no reason why this doctrine should not be extended to the case of a servant employed to protect his principal's customers, if such be the employment here, and who is also clothed with public authority in aid of his private service.

In this connection attention should be called to the conflict of evidence in respect to the amount of the money taken. If less than $25, so that the act was a mere misdemeanor, there was no authority for the arrest without a warrant. If, however, a felony was committed by the unknown woman, the arrest was fully justified, provided the circumstances afforded probable cause to believe the respondent guilty. In Anderson v. How, 116 N. Y. 336, 22 N. E. 695, it was held that probable cause is a reasonable ground of suspicion, supported by circumstances sufficiently strong, in themselves, to warrant a cautious man in his belief that a person accused is guilty of the offense of which he is charged. In the state of the record, the charge of the judge not having been returned, it is not disclosed whether the question of probable cause was determined by the court as one of law, or submitted to the jury as one of fact; and, while the verdict must be regarded as wholly exonerating the respondent from criminality, yet if a felony was in fact committed it canot be said as matter of law that the unfortunate circumstances which appeared to implicate her were not sufficient to reasonably justify a cautious person in entertaining a strong suspicion of her guilt. It follows that the judgment might probably be sustained were the question of false imprisonment the only one.

On the claim for malicious prosecution, I think the respondent failed to make out a case irrespective of the questions of probable cause and malice. The appellant did not prosecute her either before the police magistrate or the grand jury. The complaint in the store was made by Mrs. Gillin, as was also the complaint in the police court, and she alone appeared and testified before the grand jury. At all events, the appellant did not appear at any time, made no complaint, and took no apparent part in the prosecution. There is evidence tending to prove that on the way to the police station O'Reilly turned the respondent over to a policeman named Murphy, and that his active interest in the case then ceased. The learned trial justice dismissed the case against Mrs. Gillin, with the apparent acquiescence of all the parties, after all the evidence had been elicited, and if she who made the accusation, personally demanded the arrest, and conducted the prosecutions cannot be held liable for malicious prosecution, I cannot conceive how the appellant could be held liable merely because Mrs. Gillin's action was initiated on its premises. Aside from this consideration, however, the proof wholly failed to establish a want of probable cause. The possession of the stolen property by the respondent, notwithstanding her explana-

tion, being sufficient to support a conviction, it cannot be said that it was insufficient to warrant a prosecution. So far, therefore, as the verdict may have been based on the claim of malicious prosecution, it must be regarded as without warrant of law, and the judgment must be reversed, if for no other reason than because it may be founded on this unproven claim. The judgment and order should be reversed, and a new trial granted.

Judgment and order reversed, and new trial granted, costs to abide the event. All concur, except GOODRICH, P. J., who dissents.

GOODRICH, P. J. (dissenting). There was neither demurrer nor motion before the trial to correct any imperfections in the complaint, which prayed damages for false imprisonment and malicious prosecution, as might have been done upon the ground that the statement of the facts constituting each cause of action was not separate and numbered in accordance with section 483 of the Code of Civil Procedure; and, while there are conflicting decisions whether or not the plaintiff could have been compelled at the trial to elect which remedy he would pursue, I think the better opinion is that where the two causes of action are not separately stated, as is the fact here, the plaintiff should have been compelled to elect. Such a motion was made and denied, but no exception was taken.

I do not agree with Mr. Justice HIRSCHBERG that, as the verdict may have been founded on one of two causes of action, i. e., false imprisonment or malicious prosecution, the judgment cannot be sustained unless the proof establishes both causes of action. On the contrary, I think that, as the allegations and evidence were sufficient (as he writes) to establish a cause of action for false imprisonment, we might assume, if necessary to support the judgment, in the absence of the charge from the record, and in view of our ignorance of what questions were submitted to the jury, that the verdict was based on that cause of action to sustain which it was only necessary to prove detention of the person and the unlawfulness of such detention.

On the other hand, to sustain an action for malicious prosecution, three things must be shown,—malice, want of probable cause, and the termination of the prosecution,—and, in my opinion, there was evidence to sustain such a cause of action.

We are thus justified in assuming that the jury found in favor of the plaintiff on both causes of action, but, whether they based their verdict on one cause or the other, the evidence is sufficient to sustain the verdict.

I think the judgment should be affirmed.