T. MURRAY REARDON, Respondent, *v*. ERIE RAILROAD COMPANY, Appellant.

Fourth Department, July 3, 1917.

**Assault — false imprisonment — causes of action are not separately pleaded — evidence — compensatory damages — when submission of question of vindictive damages reversible error.**

In an action to recover damages for an assault and for false imprisonment in which the two causes of action were not separately pleaded and a recovery was had upon the theory that the assault was made by two of the defendant's employees and the imprisonment was effected by such employees in the performance of their duties and in the course of their employment, it appeared that the plaintiff, one of several freight handlers employed by the defendant, who had gone out on strike, having been urged to return to work, entered the freight house to examine a book and

was assaulted by a special deputy sheriff and a member of the defendant's police force and at the request of such persons was imprisoned.

*Held,* on all the evidence, that the jury were justified in finding a verdict in favor of the plaintiff upon both causes of action.

But a judgment for the plaintiff must be reversed for the erroneous submission to the jury of the question of vindictive damages for, while the plaintiff was entitled to compensatory damages, there was nothing to show that the defendant had any knowledge or suspicion that the deputy sheriff or the policemen were incompetent or unfit for the services assigned to them, or that the defendant approved or allowed said employees to commit the assault or cause the imprisonment.

Proof that the plaintiff was imprisoned and subsequently discharged was *prima facie* evidence of false imprisonment.

KRUSE, P. J., dissented, with memorandum.

APPEAL by the defendant, Erie Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Steuben on the 27th day of April, 1916, upon the verdict of a jury for $1,000, and also from an order entered in said clerk's office on the 5th day of May, 1916, denying defendant's motion for a new trial made upon the minutes.

*Warren J. Cheney,* for the appellant.

*James O. Sebring,* for the respondent.

DE ANGELIS, J.:

The action is brought to recover damages for an assault and for false imprisonment. The two causes of action were not separately pleaded. The defense was a general denial and a justification of the imprisonment. The jury rendered a verdict in favor of the plaintiff for the sum of $1,000. The theory upon which the recovery was based was that the assault was made by two of the defendant's employees and the imprisonment was brought about by such employees in the performance of their duties and in the course of their employment.

The appellant argues that the evidence was insufficient to establish either cause of action and that in any event the verdict is against the weight of evidence. The appellant also argues that errors were made by the learned trial judge in his charge to the jury.

The defendant is a steam railroad company whose road passes through the city of Corning where the defendant maintains among other things a passenger station and a freight house.

On Monday, September 27, 1915, at mid-day, sixteen or eighteen of the twenty-four freight handlers employed by the defendant in and about the freight house went out on a strike, among whom was the plaintiff. The hours during which the freight handlers worked were from seven o'clock in the morning until six o'clock at night, sometimes a little after six, and then the freight house was closed. One Kelly was the agent in charge of the freight house. Two or three clerks usually worked in the freight office until about nine o'clock at night.

There were guarding the freight house this Monday night one Purdy, a resident of Elmira, a special deputy sheriff appointed by the sheriff of Steuben county, serving without pay from the sheriff or county; one Duryea, a resident of the city of Binghamton, on the police force of the defendant who had come from Binghamton that afternoon; one Razer, a resident of Hornell, a deputy sheriff, appointed by the sheriff of Steuben county, serving without pay from the sheriff or county, and one Leonard, a patrolman, all in the employment of the defendant.

Between eight and nine o'clock on this Monday night the plaintiff entered the freight house office of the defendant in Corning where he found at work at his desk one Rupert, the billing clerk. Purdy sat at a desk at some distance from Rupert.

The plaintiff testified that he went to the office to look at the freight tonnage book and to see if the vouchers were there as he had a month's pay coming; that on that afternoon he had been approached by the freight agent Kelly and urged to return to work upon the claim that if he did so the other strikers would return with him and the further claim that there was a proposition to change the method of paying the freight handlers upon the basis of the average tonnage, the effect of which would be to increase their pay, and that part of his errand that night was to see what the average tonnage had been; that he approached Rupert and asked to look at the tonnage book which lay open on the desk and Rupert

said he might and pushed the book over to him remarking, "There is your friend Purdy over there;" that Purdy came over to him and pulled out his watch and said, "I will give you three minutes to get out of here;" that thereupon the plaintiff said, "All right, I will get out as soon as I can transact what business I have here;" that he started to turn the pages of the book back and Purdy said, "You get out now," and put his watch back in his pocket and grabbed plaintiff by the back of his neck and the back of his pants and walked him outside and out into the storm house; that he thought Purdy struck him back of the ear and he was knocked down the steps; that he saw Duryea there; that both Purdy and Duryea piled onto him and knocked him down the steps; that while he was down on the ground one or the other of them kicked him in the back and they put "twisters" on him; that Purdy directed Duryea to take the plaintiff to the police station; that Purdy said with an oath, "I got you at last, didn't I;" that they took him over to the police station and on the way Purdy said to Duryea, "Don't be afraid to twist them up a little" (referring to the "twisters" or handcuffs) and he obeyed orders; that at the police station Purdy directed Captain Ryan, the police officer, to lock the plaintiff up; that Captain Ryan asked what the charge was and Purdy said "drunk;" that at the request of Purdy Captain Ryan took the plaintiff down into the basement, in the cellar, and put him behind the bars in the corridor; that later Captain Ryan came down to him and at his request sent for the city judge who appeared about ten or eleven o'clock when the plaintiff was taken before him; that the city judge let him go without bail, directing him to appear the next morning; that he appeared the next morning in the City Court and Purdy was present; that the hearing was adjourned from time to time until October twenty-ninth, when on motion of the counsel for the complainant he was discharged.

It appears that no formal complaint was ever lodged against the plaintiff in the City Court.

The plaintiff's story is corroborated by several witnesses and the jury were justified in finding a verdict in favor of the plaintiff upon both causes of action.

The plaintiff described his physical injuries as follows:

" My back was hurting me, and my face, and I had more or less blood coming down the side of my face from a gash on the side, that was smarting and aching, and I don't know the extent of it, and my lips were swollen, and a bad bunch back of the ear, * * * as big as a walnut." His injuries were not serious and he recovered from them very soon.

The appellant insists that the learned trial judge erred in charging the jury that the plaintiff was entitled to a verdict if he established a cause of action either for assault and battery or for false imprisonment and cites in support of the proposition the case of *Tyson* v. *Bauland Co.* (68 App. Div. 310). That was a case where a cause of action for malicious prosecution and false imprisonment were pleaded, but not separately. The following is quoted from the opinion: "As it must be assumed from the record that both causes of action were submitted to the jury and the verdict may have been founded on either, the judgment appealed from cannot be sustained unless the proof establishes both causes of action."

In that case the court held that the evidence failed to establish a cause of action for malicious prosecution and that being the situation the trial court should not have submitted to the jury that cause of action. Probably the language of the Appellate Division would have been more accurate if instead of the words " unless the proof establishes both causes of action," this language had been used: " unless the proof was sufficient to justify the jury in rendering a verdict based on both causes of action." The *Tyson* case has no application here because the evidence in this case was sufficient to justify the jury in basing their verdict upon both the cause of action for the assault and the cause of action for false imprisonment.

The appellant challenges the verdict on the further ground that the trial judge erred in holding that proof that the plaintiff was imprisoned and subsequently discharged was *prima facie* evidence of false imprisonment. We think that this ruling was right. (3 Elliott Ev. § 2116; Burdick Torts, 242; *Jackson* v. *Knowlton*, 173 Mass. 94, 95.)

Over the objection and exception of the appellant the learned trial judge submitted to the jury the question of vindictive damages and we think this was an error which requires us to reverse the judgment.

Upon sufficient evidence the jury have found that Purdy and Duryea were acting within the scope of their authority in guarding the defendant's property that night, and they would have been fully authorized by the nature of their employment to have ejected the plaintiff from the freight office if it became necessary and to have caused his imprisonment if his conduct was such as to justify such action, so that it is entirely correct to say that the jury were justified in finding the defendant liable for the full amount of *compensatory* damages suffered by the plaintiff, but it would be quite a different proposition to hold that the jury would have been justified in awarding to the plaintiff *vindictive* damages.

As the result of a careful consideration of the evidence, we find nothing therein to show that the defendant had any knowledge or suspicion that Purdy or Duryea was incompetent or unfit for the service assigned to him or that there was anything in the course of the defendant's business that showed that it approved or suffered such conduct on the part of these employees as to commit the assault or cause the imprisonment which furnished the basis for this cause of action. It is well settled that in such case vindictive damages cannot be recovered. (*Lake Shore, etc., R. Co.* v. *Prentice,* 147 U. S. 101, 107; *Craven* v. *Bloomingdale,* 171 N. Y. 439.)

It follows that the judgment and order appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event.

All concurred, FOOTE, J., in a separate memorandum, except KRUSE, P. J., who dissented and voted for affirmance in a memorandum.

FOOTE, J. (concurring):

Assuming that there was evidence sufficient to require submission to the jury of the question as to whether defendant ratified the wrongful acts of the officer, Purdy, still I think the court committed error in instructing the jury: " If you were to find in this case that these acts were committed maliciously and wilfully, you might go beyond the actual damages in the case and award punitive damages; that is, damages by way of punishment." Under this form of charge, the jury were permitted to find exemplary damages against

the railroad company in case they were satisfied that Purdy committed the acts maliciously and wilfully, without reference to whether defendant had ratified the acts and without any consideration of the question whether the persons upon whose acts such ratification was predicated had any authority to act for and bind the company upon such a matter. (*Samieloff v. New York & Queens County R. Co.*, 122 App. Div. 770.)

It was also error for the court to charge: " Now, when the plaintiff comes into court upon a charge of false imprisonment, it is sufficient for the plaintiff's case to show that he was arrested and subsequently discharged. That makes out a *prima facie* case."

Kruse, P. J. (dissenting):

I concur with the conclusions reached by Mr. Justice De Angelis save that relating to exemplary damages. I think a case for exemplary damages was made out. Purdy was employed by the defendant to do police work, and it was part of his duties, not only to arrest, but to prosecute persons offending against the railroad company. He himself so testifies. The very irons which were put upon the plaintiff belonged to the defendant.

After the plaintiff was arrested the hearing before the city judge was adjourned from time to time covering a period of about a month. Not only did Purdy appear for the railroad company to prosecute the plaintiff, but also attorneys representing the defendant appeared upon some of these hearings, and finally one of them withdrew the charge against the plaintiff and the judge discharged him. I think, under such circumstances, the jury could well find, not only that the defendant ratified the arrest and prosecution, but that the arrest was made and the prosecution instituted and continued by express authority from the defendant.

This case, as it seems to me, is quite unlike the *Craven* case. It there appeared that the defendant did not directly authorize the arrest, or that he ratified it when brought to his attention.

I think the judgment and order should be affirmed, with costs.

Judgment and order reversed and new trial granted, with costs to appellant to abide event.