# FIRST NATIONAL BANK OF PORTLAND, RESPONDENT, v. CARROLL, APPELLANT.

## (No. 2,374.)

(Submitted February 14, 1907.    Decided February 26, 1907.)

(88 Pac. 1012.)

*Contracts—Actions for Balance Due—Counterclaim—Damages for Breach—Evidence—Loss of Profits—Appeal—Exceptions —Instructions—Applicability to Pleadings and Evidence— Definition of Technical Terms.*

Written Evidence—Admission of Contents Without Proof of Loss of Original—When Harmless Error.
  1.   The admission of the contents of a telegram in evidence, without proof of the inability of the party offering it to procure the telegram itself, while error, was harmless where the evidence thus brought to the attention of the jury was wholly immaterial.

Contracts—Breach—Damages—Loss of Profits.
  2.   Plaintiff sued defendant to recover a balance due for materials furnished for a pipe-line and the laying of the same.   Defendant by way of counterclaim demanded damages for the failure of plaintiff's assignor to complete certain portions of the contract within the time stipulated.   The court sustained an objection to a question asked defendant, as to what was the reasonable value of a million gallons of water delivered in the city to which the line was constructed, from the time the contract should have been completed up to the time it was actually completed.   *Held,* that while profits may be recovered as damages, if their loss is the natural and proximate result of a breach of the contract sued upon, and if they are reasonably certain of ascertainment, the court in this instance properly excluded the evidence because of the numerous contingencies upon which the profits from the plant depended.

Appeal—Exclusion of Evidence—Offer of Proof—Review.
  3.   The supreme court will not review the trial court's action in excluding evidence, where no offer of proof was made, and where the question, the answer to which was excluded, was not of such a character as to make it appear what reply was sought.

Appeal—Evidence—Exclusion—Record—Exceptions.
  4.   Where the record on appeal does not show that an exception was taken to the ruling of the court in admitting certain evidence over objection, its action will not be reviewed.

Contracts—Damages for Breach—Misleading Instructions.
  5.   In an action to recover a balance due for material furnished for, and the laying of, a water pipe-line, the complaint sought to excuse the failure of plaintiff's assignor to complete the contract within the time stipulated, by showing that the delay was caused by the act of defendant, among others, in appointing an inspector at the factory of the concern which furnished the plates for the pipe, who, it was

alleged, did not properly perform his duties but permitted some defective material to be shipped. No pretense was made by plaintiff that such inspector interfered in any manner with the shipment of sound plates. The court instructed the jury that if they found that the contract was not completed in time by reason of the delays mentioned and specified in the complaint, verdict should be for plaintiff; also, that if the delay had been occasioned by reason of *any* of defendant's acts set forth in the complaint, the time of such delay should not be included within the time agreed upon in the contract. *Held,* that these instructions were erroneous, in that they led the jury to understand that they should take into consideration, as an excuse for the failure of plaintiff's assignor to complete the contract in time, the alleged negligent acts of the inspector in passing certain defective plates, whereas his services, gratuitously furnished by defendant, in singling out and rejecting defective material would seem to have been beneficial rather than detrimental to the contractor.

Appeal—Instructions—Request for—Presumptions.
  6.  In the absence of a showing in the record on appeal making it appear affirmatively that appellant requested an instruction, similar to others objected to by him and held erroneous, it will not be presumed that such instruction was given at his instance or request.

Contracts—Breach—Instruction on Immaterial Matter.
  7.  Where, in an action to recover a balance due for materials furnished for, and the laying of, a pipe-line, there was an entire failure of proof of the allegation in the complaint that the contract, divided into sections A, B and C, could not be completed as a whole in the time limited by it because of an order by defendant to complete section B before section A, and where the proof showed that it was immaterial which section of it was completed first, it was error to submit instructions to the jury which left them to conjecture whether such change in the order of the work furnished any excuse for delay in the completion of the contract.

Same—Instruction—Definition of Technical Terms.
  8.  The court further erred in instructing the jury, in the action set out in the foregoing paragraph, on the question of damages demanded in defendant's counterclaim, that in estimating the damages, those which were "remote and speculative" should not be considered, but only those "actually" suffered by defendant,—the vice of the instruction consisting in the failure of the court to define these technical, legal terms, since without such definition the jury must have been confused upon the subject of damages properly recoverable by defendant.

Same—Instructions—Curing Error.
  9.  Nor was the error in the foregoing instruction cured by one subsequently given, assuming that the latter correctly stated the law.

Same—Loss of Profits—Instructions—Applicability to Pleadings and Evidence.
  10.  Where, in an action to recover a balance due on a contract for the furnishing of water pipe and the laying of the same, no testimony had been introduced on the question of loss of profits sustained by the noncompletion of the contract within the time limited, and where the pleadings did not warrant the submission of the question to the jury, an instruction thereon was inapplicable.

Same—Damages for Breach—Instructions—Faulty Construction.
  11.  The giving of an instruction,—in an action to recover a balance due for material furnished and labor done under a contract to construct a pipe-line, in a counterclaim to which defendant asked damages

for noncompletion of the work within the time limited,—which, in attempting to state the abstract proposition of law that only those damages which were the natural and probable result of delay in the completion of the contract could be recovered, in effect limited the defendant to the recovery of only such damages as the parties at the time they entered into the agreement knew would flow from its breach, was error, in that under it, no showing having been made that the parties at the time the contract was made knew that any particular damages would result from its breach, defendant was barred from any recovery whatever on his counterclaim.

Instructions—Abstract Propositions of Law.

12. Generally speaking, district courts in charging juries should refrain from submitting abstract propositions of law and thus leaving it to them to apply such principles to the facts of the particular case before them.

Contracts—Breach—Damages—Applicability of Instructions to Issues.

13. Where, in an action to recover for material furnished and work done in the construction of a water pipe-line under a contract, no demand was made in defendant's counterclaim for damages other than those which were the natural and probable result of a noncompletion of the contract within the time limited, and such as the parties could reasonably anticipate as a result of such noncompletion under the circumstances known to the parties at the time the contract was entered into, it was error to charge that, in the absence of proof of knowledge on the part of the contractor, at the time the agreement was made, of special circumstances which made other damages for the delay the natural and probable effect thereof, such damages only as were implied by the contract itself and such as would naturally flow from its breach or could reasonably be anticipated, could be recovered by the defendant. The instruction was inapplicable.

Same.

14. The court also erred in submitting an instruction in the case above set forth, that proof of knowledge of *special* circumstances which formed the basis of any damages claimed in defendant's counterclaim for noncompletion of the contract in time, was essential in order to make the contractor liable, where defendant had not alleged facts in his counterclaim showing any special circumstances surrounding the making of the contract by reason of which damages were caused other than those which naturally flowed from its breach. The instruction was not applicable under the pleadings.

*Appeal from District Court, Silver Bow County; John B. McClernan, Judge.*

Action by the First National Bank of Portland against Eugene Carroll. From a judgment for plaintiff and from an order denying him a new trial, defendant appeals. Reversed.

*Mr. George F. Shelton,* and *Mr. Charles R. Leonard,* for Respondent.

Loss of profits—speculative and remote—and contingent damages, cannot be considered in estimating the recovery to which

the defendant would be entitled. (*Hunt* v. *Oregon Pac. Ry. Co.,* 36 Fed. 481, 13 Saw. 516, 1 L. R. A. 842; *New York & C. M. S. Co.* v. *Fraser,* 130 U. S. 611, 9 Sup. Ct. 665, 32 L. Ed. 1031; *Howard* v. *Stillwell Mfg. Co.,* 139 U. S. 199, 11 Sup. Ct. 500, 35 L. Ed. 147; 1 Sedgwick on Measure of Damages, secs. 183, 187; *Coweta F. M. Co.* v. *Rogers,* 19 Ga. 416, 65 Am. Dec. 602; *Crabbs* v. *Koontz,* 69 Md. 59, 13 Atl. 591; *Western G. R. Co.* v. *Cox,* 39 Ind. 260; *De Ford* v. *Maryland Steel Co.,* 113 Fed. 72, 51 C. C. A. 59; *Hadley* v. *Baxendale,* 9 Ex. 341; *Snell* v. *Cottingham,* 72 Ill. 161; *Griffin* v. *Colver,* 16 N. Y. 489, 69 Am. Dec. 718; *Central Coal etc. Co.* v. *Hartman,* 111 Fed. 96, 49 C. C. A. 244; *Freeman* v. *Clute,* 3 Barb. 427; *Globe Refining Co.* v. *Landa C. O. Co.,* 190 U. S. 540, 23 Sup. Ct. 754, 47 L. Ed. 1171; *Abbott* v. *Gatch,* 13 Md. 314, 71 Am. Dec. 635; *Moffitt-West Drug Co.* v. *Byrd,* 92 Fed. 290, 34 C. C. A. 351; *Central Trust Co.* v. *Clark,* 92 Fed. 293, 34 C. C. A. 354.)

A delay in the performance of an obligation is excused when said performance is delayed by the act of the obligee. (*King Iron Bridge etc. Co.* v. *City of St. Louis,* 43 Fed. 768, 10 L. R. A. 826; *Stewart* v. *Keteltas,* 36 N. Y. 389; *Weeks* v. *Little,* 89 N. Y. 569; *Dumke* v. *Puhlman,* 62 Wis. 18, 21 N. W. 820; *United States* v. *Peck,* 102 U. S. 64, 26 L. Ed. 46; *Dannat* v. *Fuller,* 120 N. Y. 554, 24 N. E. 815; *Griffin* v. *American Gold M. Co.,* 123 Fed. 286, 59 C. C. A. 301; *Wolff* v. *Marsh,* 54 Cal. 228; *American Paper Bag Co.* v. *Van Nortwick,* 52 Fed. 752, 3 C. C. A. 274; *Smith* v. *Barber,* 153 Ind. 329, 53 N. E. 1014.)

If a party entitled to abandon a contract by reason of the failure of the other party to perform within the time limited, fails to do so, and stands by and permits the party in default to complete the work, he may be deemed to have waived the right to performance within the stipulated time. (*Phillips etc. Construction Co.* v. *Seymour,* 91 U. S. 646, 23 L. Ed. 341; *Slater* v. *Emerson,* 19 How. 224, 15 L. Ed. 626; *Emerson* v. *Slater,* 22 How. 28, 16 L. Ed. 360; *McGowan* v. *American Pressed Tan Bark Co.,* 121 U. S. 575, 7 Sup. Ct. 1315, 30 L. Ed. 1027.)

When one performs services for another on a special contract, and for any reason, except a voluntary abandonment,

fails to fully comply with his contract, and the service and material have been of value to him for whom they were rendered and furnished, he may recover for such material and services their reasonable value, after deducting therefrom any damages the party for whom such materials were furnished and services were rendered has sustained by reason of such failure. (*Gove* v. *Island City Mercantile etc. Co.,* 19 Or. 363, 24 Pac. 521; *Slater* v. *Emerson,* 19 How. 224, 15 L. Ed. 626; *Emerson* v. *Slater,* 22 How. 28, 16 L. Ed. 360; *Stillwell etc. Mfg. Co.* v. *Phelps,* 130 U. S. 520, 9 Sup. Ct. 601, 32 L. Ed. 1035; *Katz* v. *Bedford,* 77 Cal. 319, 322, 19 Pac. 523, 1 L. R. A. 826; *Trowbridge* v. *Barrett,* 30 Wis. 661; *Woodward* v. *Fuller,* 80 N. Y. 312; *Heckmann* v. *Pinkney,* 81 N. Y. 211; *Hayward* v. *Leonard,* 7 Pick. 181, 19 Am. Dec. 269. See notes to *Harris* v. *Murphy,* 56 Am. St. Rep. 661, and *Huyett* v. *Chicago etc. Co.,* 59 Am. St. Rep. 284; *Woodward* v. *Fuller,* 80 N. Y. 315.)

"A literal performance of a building contract in every detail is not a condition precedent to payment." (*Hickmann* v. *Pinkney,* 81 N. Y. 211; *Gubbins* v. *Lautenschlager,* 74 Fed. 160.)

*Messrs. Forbis & Evans,* for Appellant.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

This action was commenced by the First National Bank of Portland, Oregon, as assignee of the Wolff & Zwicker Iron Works, a corporation, to recover from Eugene Carroll the sum of $22,342.10 as balance due for material furnished under certain contracts. The complaint, as amended, sets forth the fact of the execution of three contracts by Wolff & Zwicker Iron Works and Carroll, as follows:

Contract "A" was executed April 20, 1899, and provided that the Wolff & Zwicker Iron Works should furnish to Carroll eighteen thousand eight hundred and eighty feet of water pipe and should properly lay the same, for $71,797.90. The work under this contract was to be fully completed on or before Octo-

ber 10, 1899, provided "that a proportionate time be given to the party of the second part (Wolff & Zwicker Iron Works) to complete the delivery and the laying of the last item, namely, four thousand feet of No. 8 B. W. G. steel pipe in its bid set forth." This contract concludes with this provision: "This contract is subject to strikes and delays beyond the control of the party of the second part."

Contract "B" was executed on June 6, 1899. It provided that Wolff & Zwicker Iron Works should furnish to Carroll eighteen thousand two hundred feet of pipe and should properly lay the same for the sum of $75,450. The time allowed for the completion of the work under this contract was to be proportionate to the time allowed for completing the work under contract "A."

Contract "C" was executed January 6, 1900; but its terms are not material here.

It is alleged that work under contracts "A" and "B" was completed on November 23, 1900, and on contract "C" on February 2, 1901. The complaint then alleges certain facts which, it is claimed, operated to excuse Wolff & Zwicker Iron Works from completing the contracts within the time limited, as follows: (1) Carroll's failure to furnish the specifications within the time agreed upon; (2) his modifications of the specifications after they were furnished; (3) his request that work under contract "B" should be completed before the work under contract "A" was completed; (4) the failure of certain inspectors appointed by Carroll to properly perform their work; and (5) the failure of Ryerson & Son, with whom Wolff & Zwicker Iron Works had a contract for certain material, to furnish the material within a reasonable time. All of these allegations are put in issue by the answer.

The answer admits the amount due upon the contracts, but, by way of a counterclaim, the defendant alleges that he was damaged in the sum of $35,000 by reason of the failure of Wolff & Zwicker Iron Works to complete contracts "A" and "B" within the time limited, and that he was further damaged in

the sum of $1,164.15, by reason of the failure of Wolff & Zwicker Iron Works to complete contract ''C'' within the time agreed upon.

The cause was tried to the court sitting with a jury. A verdict was returned in favor of the plaintiff for $21,177.95, and from the judgment entered on the verdict and from the order denying him a new trial, the defendant appeals.

It appears from the verdict, that the jury found in favor of the defendant for the special damages alleged, and further consideration of contract ''C'' need not be had.

1. Upon the trial of the case a witness for the plaintiff was permitted to testify as to the contents of a telegram sent by the Wolff & Zwicker Iron Works from Portland to Ryerson & Son in Chicago, without having made proof of plaintiff's inability to procure the original telegram. The ruling of the court, we think, was erroneous; but, since the evidence appeared to be wholly immaterial, and could not have influenced the jury, the error was without prejudice.

2. During the course of the trial the defendant was asked the following question: ''Q. Mr. Carroll, what would be the reasonable value of one million gallons of water delivered in Butte, under the conditions existing here in the summer of 1900, from June until September?'' A question somewhat similar was propounded to the witness Probst. An objection to each of these questions was sustained, and error is predicated upon these rulings.

The materials to be furnished by the Wolff & Zwicker Iron Works were to be used by Carroll as a part of a pipe-line to bring waters from Divide creek and from Big Hole river into the city of Butte, to be sold to the citizens of that place. The apparent purpose of these questions was to show the profits which might have been realized from the plant from the time it should have been completed under the contracts with the Wolff & Zwicker Iron Works, to the time when it was actually completed. The early English and American cases are quite

generally agreed in excluding from recoverable damages for·the breach of a contract, profits which might have been realized from the business if the contract had been performed. But, under the later decisions, recovery of profits as damages is not precluded merely because they are claimed as profits *per se,* and the question whether they may or may not be recovered is now made to depend upon the facts of each particular case, under·the well-recognized rule that, if they depend upon such changing circumstances or vicissitudes of business as to make them uncertain of ascertainment, or if they are clearly speculative and not capable of being correctly ascertained under the recognized rules of evidence, they may not be recovered; while, on the other hand, if the loss of such profits is the natural and proximate result of the breach of the contract, and such profits are made reasonably certain of ascertainment by proof of the facts which form a rational basis for estimating the amount, they may be recovered as damages, upon the principle of compensation. (See 4 Cyc. 49, where the authorities are collected.)

In the present instance the defendant, in his own behalf, testified as to the reasonable value of the use of the plant from the time it should have been completed under the contracts until it was actually completed, and clearly this was the correct standard for estimating his damages. Upon this question there is practically no difference of opinion. But considering the various contingencies upon which the profits from this plant necessarily depended, we think the court was correct in its ruling.

3. The defendant was asked to state how the failure of the Wolff & Zwicker Iron Works to complete the pipe-line during the summer of 1900 could have made a shortage of water during the winter of 1901. An objection to the question was sustained, and error is assigned. There does not appear to have been any offer of proof made, and, as the question is not of such character that we can say that it appears what answer was sought, we are unable to determine whether the ruling of the court was correct or erroneous. (*Tague* v. *John Caplice Co.,* 28 Mont. 51, 72 Pac. 297.)

4. It is alleged in the complaint, and admitted in the answer, that the work under contracts "A" and "B" was completed on November 23, 1900. Upon the trial plaintiff offered in evidence a letter from the Wolff & Zwicker Iron Works to Carroll, dated October 22, 1900, which letter notified Carroll that the work under those contracts was then completed and ready for tests and inspection. Objection was made to the introduction of this evidence, upon the ground that it tended to prove a completion of the work a month earlier than claimed in the complaint. The objection was overruled. But, so far as this record discloses, no exception was taken to the ruling of the court. We cannot, therefore, consider the objection made.

5. Error is predicated upon the giving of instructions 2 and 4, which are as follows: "No. 2. The jury are instructed that if you find from the evidence that by reason of the delays mentioned and specified in said amended complaint, the said Wolff & Zwicker Iron Works were prevented from performing the said contracts marked 'A' and 'B,' until the twenty-third day of November, 1900, and that said delays were beyond the control of the said Wolff & Zwicker Iron Works, then, as to said contracts, you are instructed that your verdict should be for the plaintiff."

"No. 4. The jury are instructed that any delay in the performance of a contract is excused when such performance is delayed by the act of the obligee, and, if you find by the evidence that the said defendant, by reason of his failure to furnish the specifications in the time agreed upon, or by reason of changes therein, or by reason of any of the acts set forth in said amended complaint done by him, and which are alleged as the grounds for the delay occasioned to the said Wolff & Zwicker Iron Works, delayed the performance of the said contracts for such length of time that the said Wolff & Zwicker Iron Works were delayed in the performance of the same, then you are instructed that the time of such delay is not to be included within the time within which said Wolff & Zwicker Iron Works were to perform the said contract; but they were to have such additional time as the said act of the defendant occasioned."

The plaintiff, in its complaint, seeks to excuse the failure of the Wolff & Zwicker Iron Works to complete contracts "A" and "B" within the time limited, by showing that certain of the delays were caused by the acts of Carroll himself (a) in failing to furnish plans and specifications in time; (b) in making alterations in the specifications after they were furnished; (c) in appointing inspectors who failed to properly perform their duties; and (d) in requiring the work under contract "B" to be completed before the work under contract "A" was completed. It is alleged in the complaint that the Wolff & Zwicker Iron Works let a contract to Ryerson & Son, of Chicago, to furnish steel plates out of which the pipe to be furnished was to be manufactured; that Carroll appointed an inspector, who was located at the factory in Ohio where Ryerson & Son secured the plates; that Carroll's inspector passed and permitted to be shipped to Portland certain plates, which were found to be defective, by reason whereof delay ensued in securing suitable plates.

Instruction No. 2 refers generally to "the delays mentioned and specified in said amended complaint"; while No. 4 refers to the acts of Carroll, which are set forth in the complaint as causes of delay. As the acts of Carroll's inspector at the Ohio factory are alleged to have occasioned delay, the jury must have understood from each of these instructions that they should take into consideration the acts of such inspector in passing defective plates, and, if they found from the evidence that he had in fact passed defective plates, such acts of the inspector would tend to excuse the Wolff & Zwicker Iron Works. In thus broadening the jury's field of investigation, these instructions are clearly erroneous. The inspector at the Ohio factory was appointed by Carroll of his own motion. He was not required to furnish such an inspector; and to whatever extent the inspector singled out and disapproved defective plates, to just that extent his labors, though gratuitously given by Carroll, would appear to have been beneficial rather than detrimental to Wolff & Zwicker Iron Works.

With respect to this inspector the witness Zimmerman, for the plaintiff, testified as follows: "If Mr. Carroll had not appointed an inspector, I don't know as it would have made any difference to us; we would not have appointed an inspector. Mr. Carroll's appointment of an inspector was simply a matter for his own protection. It was not a part of the written contract. It was simply for his own protection. * * * Perhaps we would have had a great many more defective plates if Mr. Carroll hadn't appointed an inspector; but it seems to me at the same time that the mill would have furnished different plates. There was a delay on account of the defective plates; but as to the cause of it I don't feel competent to say, and I would not say that Mr. Carroll's inspector was the cause of it."

There is not any pretense made that this inspector interfered in any manner with the shipment of sound plates. The complaint made amounts to this: So long as Carroll assumed to have the plates examined at the factory, the examination ought to have been sufficient to prevent the shipment of any defective plates. But, since Carroll was under no obligation to have the plates inspected at the factory, it would seem reasonably certain that in the absence of inspection there, all of the defective plates which were actually shipped, and doubtless many more, would have been shipped, and, possibly, even greater delay caused thereby. It would appear somewhat remarkable that the act of Carroll's agent in weeding out some of the defective plates at the factory, and thereby saving the Wolff & Zwicker Iron Works the trouble, expense, and delay arising from their shipment all the way to Portland, should be used against him; in other words, under this theory Carroll is to be punished, not for something he did, but because he did not volunteer to do more for the benefit of Wolff & Zwicker Iron Works. The allegations in the amended complaint, respecting these inspectors, ought to have been stricken out, and the subject entirely withheld from the jury.

But it is contended by counsel for respondent that appellant is in no situation to object to instructions Nos. 2 and 4, or

either of them, for the reason that a somewhat similar instruction (No. 15) is said to have been given at appellant's request. We would readily agree with counsel in this, if the record disclosed the fact that instruction No. 15 was asked by appellant. But the instructions are the instructions of the court, and a defeated litigant may always predicate error on the giving of an instruction, unless it affirmatively appears from the record that he himself asked that the objectionable instruction, or one of like import, be given. In the absence of any showing in the record, we cannot presume that instruction No. 15 was given at the instance or request of the appellant.

6. It is also alleged in the complaint that because of Carroll's order that contract "B" be completed before contract "A," Wolff & Zwicker Iron Works was delayed in the work under those contracts. But there is an entire failure of proof upon this matter. On the contrary, the witness Zimmerman, for the plaintiff, testified that it was immaterial which work was completed first; and yet these instructions left it with the jury to conjecture whether in fact such change in the order of the work was an excuse for the delay of the Wolff & Zwicker Iron Works in completing the contracts.

7. With respect to defendant's counterclaim for damages the court said: "The jury are further instructed that the defendant claims damages for delay in the fulfillment of the terms of said contract; that he is entitled to no more damage than the actual damage which he has suffered, and which he has shown himself to have suffered, by reason of said delay; and, in estimating this damage you are instructed that remote and speculative damages are not to be considered, but only the actual damage suffered by the defendant; and, in arriving at your verdict, you are to deduct from the $22,342.10, admitted to be due to the plaintiff, such sums only as you shall find from a preponderance of all the evidence to have been suffered by the defendant. If that amount equal or exceed the amount admitted to be due to the plaintiff, then your verdict should be for the defendant." (Instruction No. 7.)

Every one of the terms "actual," "remote," and "speculative," as used in this instruction, is a strictly technical, legal term. Nowhere in the charge are any of these defined. So that a jury of laymen was left to determine for themselves, or every man for himself, what remote damages are, and what speculative damages are, as distinguished from actual or proximate damages; and, in effect, they were told that when they had first agreed upon a correct legal definition of these terms, and had applied such definition to the facts of this case, then they should exclude from consideration all elements of damages which fell within their definitions. Certainly, it cannot be said that instruction No. 7 aided the jury; but, on the contrary, it manifestly could serve but a single purpose, viz., to completely confuse the jury upon the subject of damages, which was an issue in the case. And the defect in this instruction cannot be said to have been cured by the general rule correctly given in instruction No. 16. If we assume that instruction No. 16 correctly states the law, there could not have been any purpose whatever in giving instruction No. 7.

It may be that under the particular circumstances of this case, considered with reference to the theory upon which it was tried, no harm resulted from the giving of instruction No. 7, since the jury apparently found that the contract was completed within the time agreed upon, as modified or extended by delays beyond the control of Wolff & Zwicker Iron Works; but, since this case must be remanded for a new trial, attention is directed to instruction No. 7, that the error in giving it may not be repeated.

8. Instruction No. 8 ought not to have been given. There was not any testimony on the subject of loss or profits, and the instruction was not applicable to the issues made by the pleadings.

9. Instruction No. 9 is as follows: "The jury are further instructed that only those damages which are the natural and probable result of the delay in the completion of the contract, and those which the parties could reasonably anticipate as the

effect of the delay in completing the said contract, under the particular circumstances of the case,. and which were known to them when the contract was made, can be recovered by the defendant in this action.''

The use of the word "and" in the phrase "and which were known to them," not only renders the instruction more objectionable than it otherwise would have been, but leaves it almost meaningless. The instruction sought to state an abstract proposition of law, which ought not to have been given to the jury in this instance even if correct. (Blashfield on Instructions to Juries, sec. 92.) But the instruction is not a correct statement of the principle. Doubtless, what the court meant to say was, that only those damages which were the natural and probable result of delay in the completion of the contracts—that is, those damages which the parties could reasonably have anticipated, as the effects of the delay in completing the contracts, under the particular circumstances of the case which were known to them when the contracts were made—could be recovered by the defendant on his counterclaim. As thus stated, the relative pronoun "which" has for its antecedent the word "circumstances," while in the instruction given, its antecedent is "damages." The principle is clearly stated by the circuit court of appeals of the eighth circuit, in *Central Trust Co.* v. *Clark,* 92 Fed., at page 297, as follows: "Those damages which are the natural and probable result of a breach of a contract, those which the parties may reasonably anticipate as the effect of the breach under the particular circumstances of the case which are known to them when the contract is made, and those only, may be recovered in action upon a contract. (*Rockefeller* v. *Merritt,* 76 Fed. 909, 918, 22 C. C. A. 608, 617, 35 L. R. A. 633, and 40 U. S. App. 666, 680, and cases there cited.)"

It is not difficult to understand how the parties to a contract may know and appreciate the particular circumstances under which the contract is made; but it is not easy to understand how they may know at the time of making a contract what damages will result from its breach. They may know what the

natural and probable results of a breach will be, or they may reasonably anticipate what the effects of such a breach will be; but to limit the defendant in this instance to recovery for only such damages as the parties at the time they made the contract actually knew would flow from its breach, amounts to a denial of recovery altogether if the jury understood and applied the instruction; for it was not shown that the parties knew, when making the contract, that any particular damages would flow from its breach. Under the theory of this instruction there was not anything for the jury to pass upon.

10. Instruction No. 10 is as follows: ''The jury are further instructed that, in the absence of proof of knowledge by the Wolff & Zwicker Iron Works at the time the contract was made, of *special circumstances* which made other damages for the delay the natural and probable effect thereof, such damages only as were implied by the contract itself, and such as would naturally follow from its breach, in the usual course of things, or would reasonably be anticipated by the parties thereto, can be recovered by the defendant in this action.'' This instruction was erroneous as not applicable. So far as contracts ''A'' and ''B'' are concerned, the defendant does not claim any damages other than those which were the natural and probable result of the breach of the contracts and which the parties could reasonably anticipate as a result of such breach under the circumstances known to them at the time the contracts were made.

11. Instruction No. 11 is as follows: ''You are further instructed that proof of knowledge by the Wolff & Zwicker Iron Works, at the time of the making of the contract, of special circumstances which formed the basis of any damages for the delay claimed by the defendant, is essential in order to enable the said defendant to recover the said damages for said delay; and, unless you find from a preponderance of all the evidence that such knowledge has been shown, the defendant is not entitled to recover any damages therefor.'' The error in this instruction is in the use of the word ''special'' before the word ''circumstances.'' The jury must have been led to the con-

clusion that there were some special circumstances surrounding the making of these contracts upon which the defendant relied as a basis for his right to recover damages for the breach. Such an instruction would only have been appropriate in the event the defendant had alleged facts showing special circumstances surrounding the making of the contracts, which special circumstances made damages, other than those which naturally flowed from the breach, the natural and probable consequence of such breach. As such a state of facts is not shown by defendant's counterclaim, this instruction was not applicable, and it was error to give it. While instructions Nos. 10 and 11 are correct as abstract propositions of law, and appear to have been taken from the opinion in *Central Trust Co.* v. *Clark,* above, they are not applicable to the issues made in this case.

So long as this case must be remanded for a new trial, we have deemed it inappropriate to discuss the sufficiency of the evidence to sustain the verdict returned.

The judgment and order of the district court are reversed, and the cause is remanded for a new trial.

*Reversed and remanded.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE SMITH concur.