MR. JUSTICE SHEA,
Specially Concurring Comment to Opinion:
While we concluded herein that if the term “defective condition” is given to the jury it must somehow be defined, I believe that it is not necessary to present the issues to the jury in the precise terminology of the Restatement — “defective condition unreasonably dangerous.”
The above wording has, I am certain, caused many problems of interpretation and undoubtedly has been the source of much confusion in the minds of jurors. Because it is confusing and nondefinable, the term should not be given to the jury unless it is absolutely essential to the meaning of strict liability. I believe that it is not so essential, and accordingly, the term “defective condition” can be effectively eliminated without taking any away from the basic thrust of strict liability. Thatbasic thrust is to protect the public, or give them redress against manufacturers whose products for some reason are rendered unreasonably dangerous.
The change in the law by the adoption of strict liability and the failure to define “defective condition” or “defect” was discussed by Professor Keeton in 5 St. Mary’s Law Journal, 30, 33 (1973):
“The change in the substantive law as regards the liability of makers of products and other sellers in the marketing chain has been from fault to defect. The plaintiff is no longer required to impugn the maker, but he is required to impugn the product. Simply *134 stated, the product must be defective as marketed, and it may be defective as marketed for one or the other of at least three reasons: (1) It may have been fabricated or constructed defectively in the sense that the specific product was not at the time of sale by the maker or other seller in the condition that the maker intended it to be; or (2) it may have been improperly designed; and (3) purchasers and those who are likely to use the product m ay have been misinformed or inadequately informed, either about the risks and the dangers involved in the use of the product may have been misinformed or inadequately informed, either about the risks and the dangers involved in the use of the product or how to avoid or minimize the harmful consequences from such risks. In so stating, it must be obvious that while different categories of defects are recorgnized, there has been no resolution of the ultimate question as to the meaning of defect.” (Emphasis added.)
The first question for determination is whether the plaintiff is required to prove that the product was “defective” and also that it was “unreasonably dangerous”. If both are required then clearly the jury must understand the meaning of “defect” or “defective”. Otherwise a jury would be left without meaningful guidelines concerning the key language or core test of strict liability. It is axiomatic that where material elements of the law turn on key words or terms, those words or terms, as well as the elements, must be defined for the jury. First Nat. Bank of Portland v. Carroll (1907), 35 Mont. 302, 314, 88 P. 1012 (holding that an instruction on damages which included the words “actual”, “remote” and “speculative” should have been defined for the jury); Rand v. Butte Electric Ry. Co. (1910), 40 Mont. 398, 410, 411, 107 P.87 (holding that “preponderance of the evidence” and “direct and proximate result” should have been defined for the jury). Likewise the term “defective condition” is a technical term, difficult to understand, particularly in the context of strict liability, and should be defined for the jury if the literal terminology of the Restatement “defective condition unreasonably dangerous” is to be given to the jury. In the instant case since the term “defective condition” was twice given to the jury, it should have been defined.
*135 Analysis of the Restatement language leads me to conclude that the essential thrust of the Restatement’s position on strict liability can be retained without the courts and juries having to wrestle with the meaning of “defective condition”. Concerning “defective condition unreasonably dangerous” Professor Keeton states in 5 St. Mary’s Law Journal 30, 32 (1973):
“ * * * It is unfortunate perhaps that Section 402A of the Restatement (Second) of Torts, provides that as a basis for recovery, it must be found that the product was both ‘defective’ and ‘unreasonably dangerous”, when as a matter of fact the term ‘unreasonably dangerous’ was meant only as a definition of defect. The phrase was not intended as setting forth two requirements but only one, the notion being that the product was not defective for the purpose of shifting losses due to physically harmful events unless it was ‘unreasonably dangerous’. * * *” (Emphasis added.)
By this explanation there is only one requirement, rather than two, and I believe it to be the most reasonable approach. For a detailed discussion concluding that the term “unreasonably dangerous” is the core of strict liability under the Restatement, see also: Tobias & Rossbach, A Framework for Analysis of Products Liability in Montana, 38 Montana Law Review 221, 246-255 (1977).
Two comments to 2 Restatement 2d, § 402A also lead me to believe the focal point is whether or not the condition complained of is “unreasonably dangerous”. Comment g. provides in relevant part:
“The rule [of strict liability] stated in this Section applies only where the product is, at the time it leaves the seller’s hands, in a condition not contemplated by the ultimate consumer, which will be unreasonably dangerous to him.” (Emphasis added.)
Comment j. provides in pertinent part:
“In order to prevent the product from being unreasonably dangerous, the seller may be required to give directions or warning, on the container, as to its use.” (Emphasis added.)
Each of these comments centers around the ultimate finding that *136 the condition complained of must render the product unreasonably dangerous. Otherwise, there is no liability.
Here, the District Court directly injected the term “defective condition” into the ultimate resolution of the case by stating it as part of the issues to be determined. Instruction No. 27 stated:
“The issues to be determined by you in this action are these:
“First, was the auger in a defective condition unreasonably dangerous? If your answer to this question is ‘No’, you will not consider the matter further, but will return a verdict in favor of the Defendant, and notify the bailiff, who will return you into Court. If your answer to this question is ‘Yes’, you will have a second issue to determine, namely: was the defective condition unreasonably dangerous a proximate cause of any injury to the Plaintiff? * * * ” (Emphasis added.)
It was not necessary to state the issues in this fashion. Without taking any meaning from the focal point of strict liability under the Restatement, the jury could have been instructed on the issues as follows:
First, did the unshielded intake end of the grain auger render it unreasonably dangerous? If your answer to this question is “yes”, you will have a second issue to determine, namely: was the unshielded intake end of the grain auger the proximate cause of any injury to the plaintiff?
The case was not complex in terms of the condition complained of which rendered the grain auger unreasonably dangerous. If there was more than one allegation of unreasonably dangerous condition, it would be a simple matter to convert the above instruction to one covering each of the allegations.
As stated earlier in quoting Professor Keeton, supra, the issue under strict liability is one of impugning the product rather than impugning the conduct of the manufacturer. Accordingly, the focal point is on the condition of the product as it entered the stream of commerce. The vital question is: Was it unreasonably dangerous? It is vitally important in this regard that the jury does not get bogged down in wrestling with the nondefinable and unnecessary terminology of “defective condition”.