## Isaac Krulevitz *vs.* Eastern Railroad Company.

Essex.    Nov. 4, 1886. — Jan. 5, 1887.    Devens, W. Allen, & Gardner,
JJ., absent.

In an action against a railroad corporation for malicious prosecution, the plaintiff's
evidence tended to show that he entered the defendant's train at L., intending
to go to S.; that he had previously ridden in the same train with the same
conductor a great number of times within a year or two; that, on this occasion,
when the conductor asked him for his ticket, he offered a ticket of the defend-
ant corporation, which read " L. to S. and return," on which he had already rid-
den from L. to S. on a previous day; that the conductor refused to accept the
ticket, and demanded of the plaintiff payment of his fare; that the plaintiff
replied that he had taken no money with him because he thought the ticket was
good, and asked the conductor why it was not good, to which the conductor said
that it was not good for a passage in that direction, and said the plaintiff must
pay his fare or get off; that the plaintiff said that he did not want to walk
either to L. or S., and that he would pay the fare at night, to which the con-
ductor retorted that that was what all tramps said; that the plaintiff then
offered to allow the conductor to keep the ticket as security; that the conductor
refused the offer, and told the plaintiff that he would fix him when they got to
S.; that the conductor, who was a railroad police officer, after informing the
plaintiff that, if he did not pay fare, he should arrest him or have him arrested
on arrival at S., allowed the plaintiff to retain his position in the train until he
arrived at S.; that, when the train arrived at S., a police officer, who had been
previously notified by the conductor, entered the train, and, at the conductor's
request, arrested the plaintiff, before he left or attempted to leave the car; that
the conductor afterwards made a complaint against the plaintiff for evad-
ing the payment of fare by leaving the car without having paid his fare; and
that the plaintiff was tried on this complaint, the conductor being a witness,
and was acquitted. *Held,* that there was evidence that the complaint was made
without probable cause.

A passenger on a railroad train refused to pay his fare. On the arrival of the
train at the place where the passenger intended to leave the train, and before he
left, he was arrested, at the request of the conductor, who was a railroad police
officer, by a local police officer, without a warrant. *Held,* that the arrest was
not necessarily, as matter of law, an arrest by the conductor as a railroad police
officer. *Held, also,* that if the conductor, in making the request for the arrest,
acted merely as conductor, and within the scope of his employment, the arrest
was not authorized by the Pub. Sts. c. 103, § 18, and constituted an assault and
false imprisonment, for which the passenger could maintain an action against
the railroad corporation.

Tort, in two counts.   The first count was for an assault and
false imprisonment, and the second count was for malicious
prosecution.   After the former decision, reported 140 Mass. 573,
the case was tried in the Superior Court, before *Aldrich,* J.,
who allowed a bill of exceptions, in substance as follows:

The plaintiff offered evidence tending to prove the following facts: On July 7, 1884, the plaintiff entered the defendant's train at Lawrence, intending to go to Salem. He had previously ridden in the same train, with the same conductor, a great number of times, within a year or two. On this occasion, when the conductor asked him for his ticket, he offered a ticket of the defendant corporation, which read "Lawrence to Salem and return," on which he had already ridden from Lawrence to Salem on a previous day, as appeared by the holes punched in the ticket; and it was conceded that this ticket did not entitle him to be carried a second time from Lawrence to Salem. The conductor refused to accept the ticket, and demanded of the plaintiff payment of his fare. The plaintiff replied, that he had taken no money with him, because he thought the ticket was good, and asked the conductor why it was not good, to which the conductor said that it was not good for a passage in that direction, and said the plaintiff must pay the fare or get off. The plaintiff said that he did not want to walk, either to Lawrence or Salem, and that he would pay the fare at night, to which the conductor retorted that that was what all tramps said. The plaintiff then offered to allow the conductor to keep the ticket as security. The conductor refused the offer, and told the plaintiff that he would fix him when they got to Salem.

It was denied by the conductor that he said anything to the plaintiff about tramps, or that the plaintiff offered to pay his fare at night, or at any other time, or that he offered the conductor any ticket as security, or that he told him that he had no money; but he testified that the plaintiff absolutely refused to give him anything except the ticket first named, saying, "That is all you will get, take that or nothing," and also refused to leave the train.

The evidence also tended to prove the following facts: The conductor, who was a railroad police officer, after informing the plaintiff that, if he did not pay fare, he should arrest him or have him arrested on arrival at Salem, allowed the plaintiff to retain his position in the train until he arrived at Salem. On the arrival of the train at this station, certain of the local police, who were in readiness, in consequence of a previous notice from

the conductor, entered the train, and the conductor, pointing out the plaintiff, said to them, "That is the man," and told them to take him to the lockup. Thereupon, in consequence of this direction, and in the presence of the conductor, said officers, without a warrant, took the plaintiff in charge, before he left or attempted to leave the car, and took him to the police station in Salem, where he remained in custody until released on bail. The conductor afterwards made a complaint against the plaintiff for evading the payment of fare on this occasion, by leaving the car without having paid it; and on this complaint the plaintiff was tried, the conductor being a witness, and was acquitted.

At the conclusion of the evidence, the defendant requested the judge to instruct the jury, that the action could not be maintained; and that there was no sufficient evidence to warrant the jury in finding that said complaint was made without probable cause by the conductor. But the judge declined so to rule.

The defendant also requested the judge to instruct the jury as follows: " 1. If the conductor took no action after the plaintiff had refused to pay his fare, or had failed to pay it upon demand, until the arrival of the train at Salem, except to inform the plaintiff that, upon arrival at Salem, he would be arrested, and if, upon arriving at Salem, the conductor pointed out the defendant to one or more police officers who had, at the conductor's request, entered the car for the purpose of arresting the plaintiff, and, in consequence of such pointing out and in the presence of the conductor, the said officers arrested the plaintiff, such being the result the conductor intended to effect by pointing out the plaintiff to the policemen, such facts would, as matter of law, constitute an arrest of the plaintiff by the conductor. 2. Under the provisions of the Pub. Sts. c. 112, § 197, and c. 103, § 18, the conductor is authorized, in the cases named in either of said sections, to arrest the offender without a warrant and remove him to a baggage or other suitable car of his train, and confine him in such car until his arrival at a station, and then place him in charge of an officer; or to arrest him without removing him to or confining him in such car, and then, upon arrival at a station, place him in charge of an officer; or, without arresting him or removing him, to place him in charge of an officer at such station in the first instance."

The judge declined to give said instructions, and instructed the jury, in substance, as follows: " No officer in Salem could arrest the plaintiff without a warrant, as he did nothing in their presence, and the police officers in Salem, without a warrant, had no right to arrest him for anything which took place before his arrival there. The conductor was authorized to arrest and detain the plaintiff. The question is, Did he do it, and take the plaintiff into his custody as a railroad police officer? If he did not so arrest him in Salem at the end of his journey, the arrest in Salem was unlawful. If the conductor did not arrest him on the road, the officer could not arrest him without a warrant after his arrival at the end of his journey." The judge also gave full instructions as to what would constitute an arrest, to which no exception was taken.

The judge submitted to the jury the following special issue: " Did Nason, the railroad police officer, arrest the plaintiff? " and instructed the jury that, if they found the special issue submitted to them in the negative, they would be authorized to find that the arrest in Salem was unlawful, and the plaintiff would, upon such finding, be entitled to recover upon the first count of his declaration.

The jury found the special issue in the negative, and returned a general verdict for the plaintiff in the sum of $450 ; and the defendant alleged exceptions.

*F. L. Evans*, for the defendant.

*C. U. Bell*, for the plaintiff.

HOLMES, J. 1. The malicious prosecution alleged in the second count was for fraudulently evading the payment of fare by leaving a car without having paid it. The evidence in the case at bar was that the plaintiff was arrested before he attempted to leave the car, and it also would have warranted a finding that the conductor who made the complaint believed the plaintiff's story, and did not believe that the plaintiff was attempting a fraudulent evasion of any sort. There was evidence, therefore, that the complaint was made without probable cause. *Krulevitz* v. *Eastern Railroad*, 140 Mass. 573.

2. The conductor did not arrest the plaintiff at once, nor did he arrest him at all in person, but, when the train reached Salem, pointed him out to other officers, who made the arrest at

the conductor's request. This was not necessarily, and as matter of law, an arrest by the conductor in his capacity of railroad police officer. The jury were given to understand that they might take this view of the facts, which would regard the conductor's request as made in his capacity of officer, and the other officers as his servants. But it was also possible to find that the request to the officers was made by the conductor only in the capacity of conductor; in other words, that he simply made a complaint to them, just as he might have done if he had not been an officer himself, in which case the arrest was not made by him as railroad police officer. This was the view taken by the jury, and it follows that the arrest was not justified by the statute. The statute does not authorize an arrest by officers not present when the offence is committed, upon complaint by a conductor. Pub. Sts. *c.* 103, § 18. It was not denied that the conductor caused the arrest to be made, or that he was acting within the scope of his employment, so far as to make the defendant liable for his tort. The only question was in what capacity he acted. If the arrest was unlawful, it was an assault and a false imprisonment by the defendant. *Cody* v. *Adams*, 7 Gray, 59. *Smith* v. *Bouchier*, 2 Stra. 993.

*Exceptions overruled.*