## BRILL v. EDDY, *et al.*, *Appellants.*

### Division One, May 8, 1893.

1. **Railroad:** REMOVING TRESPASSER FROM TRAIN: NEGLIGENCE.   A servant of a railroad in the performance of his duty in removing a trespassing boy from the company's train is bound to exercise ordinary care.

Brill v. Eddy.

2. ——: ——: ——. Where the boy in such case receives injury occasioned by the lack of ordinary care on the part of the servant, the company will be liable.

3. ——: ——: ——: QUESTION FOR JURY. Where, in an action by the boy to recover for such injuries, it appears that the servant had only one arm, that the boy was clinging to the ladder of the car, that when the car reached the servant he pulled plaintiff off, when he fell and was injured, the question of negligence is one for the jury.

4. ——: ——: ——. Where such servant was also a city police officer, but did not intend to arrest the boy, and one of his duties as the company's servant was to keep the boys off the cars, the fact that he was such policeman will not relieve the company from liability, since at the time of the act complained of he was acting in his capacity as the company's servant.

5. ——: ——: ——: EVIDENCE. Evidence that the boy's father failed to keep him away from the cars after being notified to do so was properly excluded, since the father's negligence is not imputable to the boy.

6. ——: ——: ——: HARMLESS ERROR. Where the boy testified that he knew it was wrong to ride on the cars and that he had often been driven away from them, the exclusion of evidence by the father that he had told the boy to keep away from them is harmless error.

*Appeal from Pettis Circuit Court.*—HON. RICHARD FIELD, Judge.

AFFIRMED.

*Jackson & Montgomery* for appellants.

(1) Even if McMahan had been guilty of any negligence at the time and place complained of, the defendants cannot be held liable therefor, because McMahan was a special policeman and not the servant of defendants, and his alleged acts were not in the line of any duty as a servant of the defendants. *Farber v. Railroad*, 32 Mo. App. 378; *Tolchester Beach Improvement Co. v. Steinmeier*, 20 Atl. Rep. 188; *Thornton v. Railroad*, 42 Mo. App. 58; 2 Wood's Railway Law, p. 1212; *Carter v. Machine Co.*, 51 Md. 290. He was a *de facto* officer, and, so far as this case is concerned, his

acts had the same effect as though he had been regularly confirmed. 1 Dillon on Municipal Corporations, sec. 215 and note; note to secs. 22 and 256, and sec. 276 and note; 2 Dillon on Municipal Corporations, note to sec. 892 on page 1079. (2) The court erred in permitting the plaintiff to amend his petition after the evidence was in, for the reason that the amendment made changed the cause of action. (3) The court erred in excluding evidence offered by defendants. (4) The plaintiff was a trespasser, and his injury was the result of his trespass and of his own negligence contributing thereto, and for that reason was not entitled to recover. Notwithstanding his minority, the plaintiff by his evidence, showed himself to be of such mental capacity, and to have such an understanding of his conduct and its probable effect, as to render such conduct negligent, and to make him responsible for the same. *Hughes v. Railroad,* 66 Mo. 325; *Turner v. Thomas,* 71 Mo. 596; *Donoho v. Iron Works,* 75 Mo. 401; *Duffy v. Railroad,* 19 Mo. App. 380; *Williams v. Railroad,* 96 Mo. 275; *Eswin v. Railroad,* 96 Mo. 290; *Schmidt v. Distilling Co.* 90 Mo. 284.

*W. S. Shirk* and *Sangree & Lamm* for respondent.

(1) McMahan was the servant of defendants. *First.* They selected him, they paid him, they controlled him, they prescribed his duties and these duties pertained to their property and benefit and interests, and he was subject to discharge by them. Hence, by every recognized and controlling test and definition, the relation of master and servant existed. Bishop on Non-Contract Law, sec. 599; *Sproul v. Hemingway,* 14 Pick. 1; Wood's Master and Servant, secs. 1, 317 and note 1, 539; *Laugher v. Pointer,* 5 B. and C., 547; Cooley on Torts, 531; 1 Parsons on Contracts, 101;

1 Lawson's Rights, Remedies and Practice, sec. 294 and cases cited under notes 1 and 2; *Mound City, etc. Co. v. Conlon*, 92 Mo. 221. *Second.* Even if McMahan was a *de facto* policeman with power to make arrests (which is not at all conceded), yet being in the employ and under the direction and subject to the control and interference of defendants, his services being rendered to them and his duties defined by them, he became thereby their servant and was in no just and accurate sense an independent officer. A police officer may be a civil agent. *Gerhardt v. Savings Institution*, 38 Mo. 60; *Daily v. Bank*, 56 Mo. 102; *Walker v. Railroad*, 39 L. J. C. P., 346; *Goff v. Railroad*, 3 Ellis & Ellis 672; Wood on Master and Servant, p. 542; *Collett v. Foster*, 2 Hurl. & N. 356; *Bagley v. Railroad*, L. R., 7 C. P., 415; Wood on Master and Servant, sec. 459, p. 553; *Railroad v. McKee*, 99 Ind. 519; *Lynch v. Railroad*, 90 N. Y. 86; *Harris v. Railroad*, 35 Fed. Rep. 116; *Yates v. Brown*, 8 Pick. 23; Patterson's Railway Accident Law, p. 110; *Jardine v. Cornell*, 14 Atl. Rep. 590; *Edwards v. Railroad*, 1 American and English Railroad Cases, 571; *Griffin v. Railroad*, 148 Mass. 143. (2) The acts complained of were within the scope of the employment of McMahan as the servant of defendants and in the line of his prescribed duties while he was about his master's business and furthering his master's ends, and, hence the rule of *respondeat superior* applies. Whether the master directly authorizes the act or not, or was or was not privy thereto, if he places his agent or servant in a place to do a certain class of acts or accomplish a certain end, he is responsible for the means and methods and discretion of the servant employed and used to accomplish the expected result. He sets in motion the agency that produced the mischief and is liable. *Marion v. Railroad*, 59 Iowa, 428; *Borwick v. Bank*, L. R., 2 Exch. 265;

*Garretzen v. Duenckel*, 50 Mo. 104; Wood on Master and Servant, p. 561 and cases cited under note 2; *Harriman v. Stowe*, 57 Mo. 98; *Whitehead v. Railroad*, 99 Mo. 270; *Shea v. Railroad*, 62 N. Y. 180; *Cosgrove v. Ogden*, 49 N. Y. 257; Whittaker's Smith on Negligence, pp. 154, 155; *Holmes v. Railroad*, 12 Allen (Mass.) 580; *Limpus v. London, etc. Co.*, 1 H. & C. Exch., 528; *Railroad v. Hack*, 66 Ill. 238. (3) Whether McMahan was the servant of defendants and whether he acted within the scope of his employment and in the line of his prescribed duties and about his master's business at the time he did the acts resulting in the injury to the child, are all questions of fact to be submitted to and answered by the jury (*Courtney v. Baker*, 60 N. Y. 1; *Perigo v. Railroad*, 55 Iowa, 326; Wharton on Negligence, sec. 167; *Dwinelle v. Railroad*, 120 N. Y. 117; *Railroad v. Spicker*, 105 Pa. St. 142; *Rounds v. Railroad*, 64 N. Y. 129; Wood on Master and Servant, p. 549), and was so submitted and answered in the affirmative. (4) Though the child was a trespasser, this fact gave defendants no right to remove him by dangerous or negligent methods, or at dangerous times, or by inadequate means, or by the application of reckless and negligent and unnecessary force from a moving train. *Carter v. Railroad*, 98 Ind. 552; *Railroad v. Savage*, 110 Ind. 156; *Railroad v. Kelly*, 36 Kan. 655; *Shea v. Railroad*, 62 N. Y. 180; *Lang v. Railroad*, 51 Hun, 63; *Brown v. Railroad*, 66 Mo. 595; *Lovett v. Railroad*, 9 Allen (Mass.) 557; *Rounds v. Railroad*, 64 N. Y. 129; *Biddle v. Railroad*, 112 Pa. St. 551. (5) The question of the contributory negligence of the child was put to the jury (in the form desired by defendants) and passed on by them. *First.* If plaintiff was guilty of contributory negligence by placing himself in a dangerous position, and yet the proximate cause of the injury was the careless and

negligent acts of defendant's servant, plaintiff may recover. *Kelly v. Railroad*, 95 Mo. 279; *Brown v. Railroad*, 50 Mo. 461; Weeks' Damnum Absque Injuria, 242 and authorities cited; 1 Harris' Damages by Corporations, page 406 and *post* and authorities cited; *Winters v. Railroad*, 99 Mo. 509. *Second.* But allowance is to be made for the immature judgment, impulsiveness and thoughtlessness of children. This is the rule of humanity, of parental authority, and is the benign doctrine of the civil law. *Cooper v. Railroad*, 66 Mich. 261; *Eswin v. Railroad*, 96 Mo. 290; *Burger v. Railroad*, Mo. Sup. Court; *Williams v. Railroad*, 96 Mo. 275; 1 Harris' Damages by Corporations, p. 542 and note and p. 548. *Third.* And of the criminal law. The presumption is that under fourteen years of age a child is incapable of committing a crime. *State v. Adams*, 76 Mo. 355; *State v. Tice*, 90 Mo. 112.

BLACK, P. J.—The plaintiff, a minor suing by his next friend, brought this action against the defendants, who are the receivers of the Missouri, Kansas & Texas Railway Company, to recover damages for the loss of an arm. The chief complaints made in this court, are, *first*: that there is no evidence of negligence on the part of McMahan; *second*, if McMahan was guilty of negligence the defendants are not liable because he was acting in the capacity of a police officer.

The evidence bearing on the first complaint is in substance this: The yards of the railroad company extend from Third to Eleventh streets in the city of Sedalia. Various repair shops are located therein, and a large number of men are engaged in the shops and yards in repairing disabled cars. The main and several side or switch tracks run north and south through the yards. Broadway or Eighth street runs east and west

and crosses the yards.   John McMahan was employed
by defendant as day watchman at and  for a long  time
prior to the accident, and it was  his duty to keep boys
out of the yards and away from the cars.   While stand-
ing in Broadway near the  place  where the tracks cross
that street, he saw the plaintiff and  three or four other
boys hanging to the cars of a freight train going south.
It seems the plaintiff and the other boys got on the cars
at the north end of the yards.   Some of  the  witnesses
say the train was  moving at the rate of ten miles per
hour,  but  other  evidence tends to show  that it  was
moving at a much less rate of speed.  McMahan stepped
forward so  the train would pass close to him.  All
the boys except the plaintiff  saw  him  and  at  once
jumped down and ran away.   The plaintiff  had
one foot on the lower step of  a ladder attached to
the front end of  a car, and held on by grasping the
upper rounds with his  face to the car.   The proof
is all to the effect  that  he  did not  see  McMahan
and  that  the  latter  gave  the  boy  no  warning.
McMahan had but one arm.   The witness Brown who
saw the whole transaction testified:   McMahan got his
arm partly around the boy, not  clear around him, but
just far enough to  jerk him  loose;  the  boy fell down
under the car; McMahan made a  grab for him and got
him up when he fell back; McMahan  made a second
attempt to get the boy but did  not get him in time to
save his arm.   Several  other  witnesses testified that
McMahan jerked the boy loose as the cars passed and
that the boy  fell or was  knocked under  the  car.
McMahan testified as follows:   "When the boy got
close to me he let  loose and  jumped off  and in doing
so struck me; the force of  the  moving car  threw him
against me as he fell; I attempted to catch  him but he
twisted around and fell; the  axle of  the  wheels struck
him and  turned him  over, and I made a second grab

for him; the front wheel of the back truck ran over his arm."

A city ordinance read in evidence made it a misdemeanor for a boy under the age of eighteen years to hang to a moving car. The boy testified that he knew it was wrong to ride on the car, that he knew McMahan was a policeman and that he had been warned to keep away from the cars.

The boy was beyond all doubt a wrong-doer and a trespasser at the time of the accident, and he took upon himself all risks and dangers arising from the act of riding on the car. Being a trespasser, McMahan, as the servant of the defendants, had a right to put him off. Though McMahan had this right, still he was in duty bound to use ordinary care in removing the boy from the car. For injuries to the boy arising from the want of such care the defendants are liable. 1 Shearman & Redfield on Negligence, [4 Ed.] sec. 89.

The question then is whether the evidence tends to show the want of such care. According to the evidence of McMahan he was in no way to blame, but there is much evidence to the contrary. That produced by the plaintiff is to the effect that McMahan pulled or jerked the boy off while the car was in motion, that McMahan was a cripple and therefore unable to handle the boy with care. It stands conceded that the boy had no notice or warning whatever. There is no doubt that the boy struggled when McMahan took hold of him, and it may be but for his struggling he would not have been injured, but McMahan as a reasonably prudent man must have known that the boy would offer some resistance when grasped without warning. To take the boy from the moving car under the circumstances here disclosed was a dangerous undertaking, and the court did not err in submitting the issue of negligence to the jury.

It follows from what we have said that the fact that the boy was a trespasser will not, as a matter of law, defeat a recovery. There is certainly no other circumstance in evidence from which the court could, as a matter of law, declare the boy guilty of contributory negligence. The demurrer to the evidence was therefore properly overruled.

The evidence on the other issue discloses the following facts: Some three or four months before the accident the mayor of the city of Sedalia, at the request of some of the railroad officials, appointed McMahan a special policeman. The appointment was in writing signed by the mayor. McMahan had been appointed for a like purpose and in a like manner in the spring of every year for a period of eight or nine years. During all that time he was employed by the railroad company as a watchman until it passed into the hands of the receivers and then by them. He wore a policeman's star, but he did not wear the uniform prescribed for regular police officers and did not report to any city officer. It seems he had made some arrests prior to his last appointment. During the eight or nine years it was his duty to keep trespassers out of the yards, to prevent persons from interfering with the men while at work, to see that the shops were properly closed at night and to carry the shop mail. It was also his duty to drive boys out of the yards and keep them off the cars.

The ordinance above mentioned provides that any minor under the age of eighteen years who shall, without authority to do so, climb upon, enter or hang to any car while in motion, shall be deemed guilty of a misdemeanor; and by another ordinance it is provided that the police officers shall, without warrant, arrest any one found guilty of violating the city ordinances.

It is no uncommon thing for corporations and

individuals to employ duly appointed police officers to watch their property; and if such an officer so employed make an arrest for disorderly ·conduct, the presumption is that he acted in his official capacity as the agent of the state, and not as the agent of his employer. Being an officer whose duties are prescribed by law, it should be presumed, until the contrary is made to appear, that his employment contemplates only the exercise of such powers as the law confers upon him. 2 Wood's Railway Law, 1212; *Tolchester Beach Improvement Co. v. Steinmeier,* 20 Atl. Rep. 188; *Jardine v. Cornell,* 14 Atl. Rep. 590. The presumption is, however, one of fact, and it may be shown that in making the arrest he acted under orders of his employer, in which event the employer would be liable for the unlawful acts of the officer. Under the· ordinance before mentioned McMahan as a, police officer had a right to arrest the boy on view for hanging to the car; and if the evidence tended to show that he committed the negligent act when making or attempting to make an arrest, it would follow from what has been said that the question whether he acted under the orders of defendant or their authorized agent would be one for the jury.

But there is no such evidence. His evidence as well as all the circumstances in the case show that he did not intend to arrest the boy. His only purpose was to take the boy off the car and to drive him out of the yards, a thing not within the line of his duties as a police officer, but a duty devolved upon him by the defendants. He was their paid servant, and as such charged with the performance of duties other than those pertaining to the office of a policeman. At the time of the accident he was engaged in enforcing the rules and regulations prescribed by the defendants. In attempting to remove the boy from the car he was

not doing, or intending to do, any act devolved upon him as an officer of the law, and the fact that he had been appointed a special policeman has nothing what ever to do with this case.

With this conclusion it is not necessary to discuss the refused instructions relating to this branch of the case; nor is it necessary to consider the question made by counsel for the plaintiff that McMahan was not a police officer because he gave no bond and his appointment by the mayor was not confirmed by the city council.

The defendants, on the cross-examination of the father of the plaintiff, offered to show by him that he had been notified that the boy was in the habit of climbing upon the cars, and to keep the boy away, and that he had told the boy to stay away from the yards, which evidence the court excluded. This is an action by the boy, and not the father, and the negligent omission of the father to keep the boy away from the yards cannot be imputed to the boy. *Winters v. Railroad*, 99 Mo. 510.

The offer to show that the father told the boy to stay away might have some bearing on the defense of contributory negligence, so far as to show that the boy knew it was dangerous to cling to the moving cars. We think the judgment should not be reversed because of the exclusion of this evidence, since the boy himself testified in plain and distinct terms that he knew it was wrong to ride on the cars, and that he had been driven away from the yards on a number of occasions. With this evidence of the boy before the jury, the defendants could not have been prejudiced by the exclusion of that of the father on the same point. The judgment is affirmed. BARCLAY, J., absent. The other judges concur.