RAND, RESPONDENT, *v.* BUTTE ELECTRIC RAILWAY CO.
ET AL., APPELLANTS.

(No. 2,749.)

(Submitted January 19, 1910. Decided January 29, 1910.)

[107 Pac. 87.]

*Personal Injuries—Carrier and Passengers—Assault on Passenger—Master and Servant—Special Peace Officers—Liability of Master— Evidence— Admissibility— Trial— Instructions— Excessive Verdict.*

Pleadings—Joint Demurrer—When Properly Overruled.
   1.   A general demurrer interposed jointly by all five of defendants in a personal injury action was properly overruled, where the complaint stated a cause of action against two of them.

Same—Argumentative Denials—Reply Unnecessary.
   2.   In an action against a street railway company and certain of its employees to recover damages for an assault alleged to have been committed upon plaintiff by the latter, who also held appointments as deputy sheriffs, an allegation in the answer that neither the company nor its codefendants were liable, stating the reasons why liability did not exist, constituted an argumentative denial, and therefore did not require a reply.

Personal Injuries—Failure to Connect All Defendants with Wrong—Nonsuit.
   3.   The fact that plaintiff failed to connect one of several defendants, in a personal injury action, with the wrong complained of, did not impair his right to recover as against the others, and a motion for nonsuit was therefore properly denied.

Same—Master and Servant—Carrier and Passenger—Assault on Passenger—Evidence—Admissibility.
   4.   Evidence that the persons committing the assault upon plaintiff had been appointed deputy sheriffs at the request of defendant company's manager and were paid by the company was pertinent and material so far as it tended to show the relation of master and servant.

Same—Evidence—Erroneous Admission—Curing Error.
   5.   The erroneous admission of evidence is cured where subsequently the same facts are proven or admitted by the objecting party.

Same—Trial—Instructions—Statement of Issues—Must be Complete.
   6.   Where the trial court in its instructions undertakes to state to the jury the issues made by the pleadings, its statement of them should

be definite and complete; hence the giving of a paragraph reciting substantially the allegations of the complaint and continuing that "the defendants deny certain of these allegations," etc., was error; *held,* however, that in view of subsequent portions of the charge, the error was rendered harmless.

Same—Instructions—Failure to Define Terms—When not Reversible Error.
  7.  Failure of the court to define, in its instructions, the terms "preponderance of the evidence," and "the direct and proximate result" of the injury complained of, does not, in the absence of a request by counsel with tender of an instruction embodying such definitions, constitute reversible error.

Same—Instructions—Theory of Case.
  8.  An instruction defining the term "passengers" and outlining the duty of the carrier and its servants toward them, and one stating the measure of damages for the breach of an obligation not arising from contract, were not objectionable as submitting the case upon two inconsistent theories—one based upon the idea that the action was one for breach of the contract of carriage, and the other an action for damages as for a tort.

Joint Appeal—Antagonistic Position of Appellants.
  9.  Where an appeal is taken jointly by all defendants, one of them will not be heard in the appellate court to assume a position antagonistic to the other appellants.

Personal Injuries—Master and Servant—Assault—Peace of Officers—Liability of Master.
  10.  The employer of one who acts in the dual capacity of employee and special peace officer cannot escape liability for the wrongful acts of the latter merely because at the time he was a public officer.  The rule is that if the wrong done was committed by the servant, while acting as officer, the master is not liable; but if done during the course of his employment, liability rests upon the latter even if the act done was in excess of authority.

Same—Question for Jury.
  11.  The question whether street railway employees, who also held appointments as special deputy sheriffs so as to enable them by a show of legal authority to enforce order while engaged in the discharge of their duties as employees of the company, were, when committing an assault upon plaintiff, when the latter was about to take passage on one of its cars, acting as peace officers or as employees, *held,* under the evidence, to have been one for the jury to determine.

Same—Excessive Verdict.
  12.  A verdict for $2,500 in favor of plaintiff who, when about to become a passenger on a street-car, was severely beaten by two of defendant company's employees, for alleged boisterous and unseemly conduct, so that his head and face were badly cut and bruised and his nose was broken, as a result of which treatment he was confined to his bed under medical treatment for several weeks, *held,* not to have been excessive.

*Appeal from District Court, Silver Bow County; Jeremiah J. Lynch, Judge.*

ACTION by R. N. Rand against the Butte Electric Railway Company, and others.  From a judgment for plaintiff and an

order denying defendants' motion for a new trial, they appeal. Affirmed.

*Mr. W. M. Bickford,* and *Mr. George F. Shelton,* submitted a brief in behalf of Appellants; oral argument by *Mr. Shelton.*

A person on whose premises a public officer is appointed for duty is not liable for the damage resulting from the acts of such public police officer acting within the scope of his duty, even in cases where the salary is paid by the person who owns the property. (See *Hershey* v. *O'Neill,* 36 Fed. 168; *Wells* v. *Washington Market Co.,* 19 D. C. 385; *Hardy* v. *Chicago etc. Ry. Co.,* 58 Ill. App. 278; *Hirst* v. *Fitchburg etc. Co.,* 196 Mass. 353, 82 N. E. 10.)

The plaintiff having brought his action on the theory of a joint ownership and liability of W. A. Clark and the Butte Electric Railway Company, and having failed at the trial to connect Clark with the matters mentioned, so that a nonsuit was granted as to him, the appellants contend that the plaintiff therefore failed to show any cause of action at all, in accordance with the theory of the complaint, the nonsuit as to Clark being conclusive on that point. The case would therefore seem to fall within the spirit of the decision of this court in the case of *Forsell* v. *Pittsburg & Montana Co.,* 38 Mont. 403, 100 Pac. 218.

When the court undertakes to state to the jury the issues made by the pleadings, it should specially instruct them as to what facts are denied and what are admitted in the pleadings and as to what facts are material. (*Tipton* v. *Triplett,* 1 Met. (58 Ky.) 570; 11 Ency. of Pl. & Pr. 155, 156.) The instruction should define the issues and limit them according to the pleadings. (*Gessley* v. *Missouri Pac. Ry. Co.,* 26 Mo. App. 156; *Bradshaw* v. *Mayfield,* 24 Tex. 481.)

The pleadings and the evidence showed that whatever injuries the plaintiff received came to him in a scuffle while he was resisting the actions of McDonald and Vivian, special deputy sheriffs, acting merely as such, while they were attempting to

make the plaintiff behave himself in the presence of a mixed crowd of men, women and children. For the acts of these officers the Butte Electric Railway Company was not liable, and the court should have directed a verdict in favor of the company, as directed. (See *Hershey* v. *O'Neill, supra; Sharp* v. *Erie R. R. Co.,* 90 App. Div. 502, 85 N. Y. Supp. 553; *Samuel* v. *Wanamaker,* 107 App. Div. 433, 95 N. Y. Supp. 270; *Healey* v. *Lothrop,* 171 Mass. 263, 50 N. E. 540; *Jardine* v. *Cornell,* 50 N. J. L. 485, 14 Atl. 590.)

Where the testimony introduced at the trial supports either of two conflicting theories, each theory should be presented in the instructions to the jury, and the refusal so to present them is reversible error. (11 Ency. of Pl. & Pr. 182; *Atlanta etc. Co.* v. *Hardage,* 93 Ga. 457, 21 S. E. 100; *Irwin* v. *Atkins,* 12 Ill. App. 431; *Chicago etc. Assn.* v. *Butler,* 55 Ill. App. 461; *Comstock* v. *Norton,* 36 Mich. 277; *De Foe* v. *St. Paul City Ry. Co.,* 65 Minn. 319, 68 N. W. 35; *Hancock* v. *Stout,* 28 Neb. 301, 44 N. W. 446; *Fiore* v. *Ladd,* 25 Or. 423, 36 Pac. 572.)

In behalf of Respondent, there was a brief by *Messrs. Mackel & Meyer,* and oral argument by *Mr. Alex. Mackel.*

MR. CHIEF JUSTICE BRANTLY delivered the opinion of the court.

Action for damages for personal injuries alleged to have been suffered by plaintiff by an assault upon him by defendants Wharton, McDonald, and Vivian, employees of defendants W. A. Clark and the Butte Electric Railway Company, hereinafter referred to as the company, while acting within the scope of their employment. The facts alleged in the complaint about which there is no dispute are the following: The company owns and operates a street railway in the city of Butte which extends about two miles from the city to a pleasure resort known as the "Columbia Gardens." It also owns, controls and maintains this resort, its purpose in so doing being to secure profit from the attendance upon the resort by the public, to witness

ball games, etc., had there, and from the increase in the number of its passengers to and fro from the city. For the accommodation and convenience of its patrons in getting off and on the cars at the Gardens, the company maintains a depot and platforms, which also serve as a waiting place for passengers when about to take cars for return to the city. Defendant Wharton was at the time of the alleged assault the general manager of the company, and as such had the management and control of the Gardens. On November 16, 1907, there was a football game played at the Gardens. It had theretofore been advertised, and an invitation to attend extended to the public generally, with the knowledge and acquiescence of the defendants. A great number of people attended, all being conveyed thither as passengers on the defendant company's railway, and expecting to return by the same means. Among those who so attended was the plaintiff. It is then alleged that the Gardens were owned and controlled jointly by the company and W. A. Clark, and that the defendant Wharton was in the joint employ of the company and the said W. A. Clark. The facts connected with the alleged assault are stated in the complaint as follows:

" (9) That for a long time prior to the sixteenth day of November, 1907, and especially on the said day, the defendants Butte Electric Railway Company and W. A. Clark employed the defendants McDonald and Vivian, for the purpose of assisting in handling the crowds and patrons who attended the said Columbia Gardens and the said football game, and especially to take care, and assist in taking care, of the crowds and patrons when the said crowds and patrons went to the said depot and platform for the purpose of leaving the said Gardens and while waiting there, and returning to the said city of Butte.

" (10) That on the said sixteenth day of November, 1907, this plaintiff became a passenger upon the cars of the defendant railway company, paid his fare into and attended the aforesaid football game, and that at the close of the said game this plaintiff, in company with the rest of the crowd, went to the aforesaid platform and depot for the purpose of, and with the intention of, leaving the said Gardens and returning to the said

city of Butte upon the cars of the said defendant railway company, and that he then and there became and was entitled to the care and protection of a passenger.

"(11) That while plaintiff was on and at the said platform, and on and at the said depot and a passenger as aforesaid, the defendants McDonald and Vivian, while discharging their duty and acting within the scope of their employment, without cause or provocation, or any excuse therefor, beat, bruised, maltreated, and severely injured this plaintiff, and that all of said acts were done in the presence of, and as plaintiff is informed and believes, with the knowledge, acquiescence, and consent of, the defendant Wharton."

It then proceeds to set forth that as the result of the beating the plaintiff was severely and permanently injured, suffering physical pain and mental anguish, and also humiliation and chagrin, for all of which he claims damages in the sum of $25,250. A joint general demurrer, interposed by the defendants, was overruled.

The defendant Wharton and the company filed a joint answer, in which, after denying that defendant Clark has or had any interest in the Columbia Gardens jointly with the company or otherwise, they substantially admit all the allegations contained in the complaint, except those embodied in paragraphs 9, 10, and 11, heretofore quoted, and those touching the injuries and suffering alleged in the subsequent paragraphs. Except as to paragraph 9, the denials are of knowledge or information sufficient to form a belief as to the matters alleged. The denials of paragraph 9 are stated as follows: "As to paragraph 9, these defendants aver: That prior to the sixteenth day of November, 1907, the defendants Frank C. McDonald and Morton M. Vivian had been, and on said sixteenth day of November, 1907, were, regularly and duly appointed, qualified and acting deputy sheriffs of Silver Bow county, state of Montana, and as such deputy sheriffs were peace officers, authorized by law to preserve peace and order, and to prevent violence and disorder and unseemly conduct and the commission of disorderly acts by individuals in the county of Silver Bow, state of

Montana; and that for the purpose of preserving peace and order, and attending to the orderly conduct of people at said Columbia Gardens, said defendants Frank C. McDonald and Morton M. Vivian were, on the sixteenth day of November, 1907, present at said Columbia Gardens, and as such deputy sheriffs and peace officers were engaged in the fulfillment of their duties and functions as such at said time and place, and not otherwise were they present; nor were they engaged in any other capacity than as deputy sheriffs and peace officers, at said time and place, for the said purpose aforesaid; and these defendants deny each and every allegation of said paragraph 9 not herein expressly admitted as above set forth."

As a special defense, after alleging substantially the facts stated in the foregoing paragraph, the answer continues: That the plaintiff was present at Columbia Gardens on November 16, 1907; that in the presence of a large number of women and children he conducted himself in a boisterous, offensive, and disorderly manner, using foul and unseemly language to such an extent that appeals were made by persons present to the defendants McDonald and Vivian for protection from him; that these defendants thereupon, for the purpose of removing him from the presence of the women and children who were offended by his conduct, sought to put him upon one of the cars of defendant company for transportation back to the city—his destination; that he violently and offensively resisted the efforts of said officers, and, in doing so, violently struck his head against a projecting iron on the car, and in that manner, and not otherwise, was injured, if injured at all; and that, if he suffered damage, it was wholly due to his said offensive conduct and breach of the peace and his resistance to arrest by the officers while in the discharge of their duties, and not to any other cause. The answer of defendants McDonald and Vivian is a substantial repetition of that of defendants Wharton and the company. The separate answer of Clark denies all the allegations of the complaint which tend to connect him in any way with the cause of action alleged by plaintiff. The plaintiff by reply denies generally the affirmative defense alleged.

At the close of plaintiff's evidence a separate motion for nonsuit by defendant Clark was sustained, and the action was dismissed as to him. A like motion by defendants Wharton and the company was denied. At the close of all the evidence the court was requested to direct a verdict for each of the remaining defendants. This was denied. A verdict was returned in favor of the plaintiff for $2,500. From the judgment entered thereon, and from an order denying their motion for a new trial, the defendants, other than Clark, have appealed.

1. The first contention made is that the court erred in overruling the demurrer as to defendants Clark, Wharton, and the company. It is said that the allegations of the complaint do not show that Wharton participated in the assault in any way, it being alleged that it was committed merely with his "knowledge, acquiescence, and consent," or that defendants McDonald and Vivian were acting within the scope of any employment by the company, or in any other than in an individual capacity; and hence the court should have sustained the demurrer as to all of the defendants other than McDonald and Vivian. While there is some conflict in the decisions on the subject, it is the generally recognized rule that a joint demurrer by two or more defendants must be overruled if the complaint states a cause of action against any one of them. (Pomeroy's Code Remedies, 4th ed., sec. 468; Bates on Pleading, Practice, Parties and Forms, p. 414; Bliss on Code Pleading, sec. 417; 6 Ency. of Pl. & Pr., p. 412.) Conceding that the complaint does not state a cause of action against any of the defendants other than McDonald and Vivian, yet, since such defendants chose to make common cause with McDonald and Vivian, against whom it is now admitted that the complaint is sufficient, they cannot complain that the court did not decide a question other than the one which their demurrer presented, viz., whether under the statement of facts any one of them is liable.

2. At the opening of the trial, after a witness had answered the usual preliminary questions, objection was made to the introduction of evidence in support of the allegations of the com-

plaint, on the ground that, inasmuch as the denials in the replication respond only to the allegations of fact set forth in the affirmative defense, the facts stated in the answer in response to paragraph 9 of the complaint, stand admitted, and therefore constitute a complete defense to the action; for, counsel say, if McDonald and Vivian were acting within the scope of their duty, as charged in the complaint, and were present as peace officers and engaged in keeping the peace, as is alleged in this uncontroverted portion of the answer, they are not individually liable; nor are the other defendants liable, because it thus appears that they were not in the employ of the other defendants. In any event, counsel say, these admitted facts exclude any inference of liability on the part of the other defendants. There is no merit in this contention. Under the statute, the answer must consist of two parts, the first embodying the admissions and denials, and the second, new matter constituting a defense or counterclaim. (Revised Codes, sec. 6540.) A reply is required only when the answer contains new matter which constitutes a defense or counterclaim, stated as such. (Revised Codes, sec. 6560.) Instead of contenting themselves with the denial that McDonald and Vivian were employees of Clark and the company, the defendants undertake to allege facts showing that neither they nor the other defendants are liable, because they were present and acting in the discharge of their duties as public officers, and not otherwise. If it was a fact that McDonald and Vivian were not in the employment of the company, the company could not be held liable, no matter in what capacity they acted. Nor could Wharton be held liable unless he personally participated in the assault. Therefore, so far as they are concerned, the portion of the answer in question is an argument setting forth the reason why the defendants should not be held liable, and is what is termed in the books an argumentative denial of the portion of the complaint at which it was directed, and amounts to nothing more than a denial. (Pomeroy's Code Remedies, 4th ed., sec. 515 *et seq.;* Bates on Pleading, Practice, Parties and Forms, p. 342;

1 Ency. of Pl. & Pr. 799.) Furthermore, the same matter, alleged in connection with the other facts in the special defense, is denied. Hence it cannot be maintained that it is admitted. If it is a fact that plaintiff was assaulted`and beaten by defendants McDonald and Vivian, without provocation or excuse, the fact that they were acting as public officers at the time is no justification. A public officer has no right because he is such to use violence toward a citizen, even when in the discharge of his duty, except when the character of the duty requires it, and even then he must go no further than the circumstances demand. So that, if the facts alleged in this behalf should be deemed admitted by the replication, they would not constitute a justification or excuse for their wrongful acts.

3. It is argued that since the complaint proceeds upon the theory that defendants Clark and the company jointly owned and controlled the railway and the Gardens, and jointly employed the defendants McDonald and Vivian, and the evidence fails to show any liability on the part of Clark, or, in other words, any joint liability on the part of Clark and the company, it was error to deny the motion for nonsuit as to the company and its manager Wharton. In actions for personal injuries occasioned by an act in which all the defendants participated, the plaintiff has a right to proceed against any one of the participants, or all of them, and is entitled to judgment against any one or all by whose concurrent act the alleged wrong was done. (*Golden* v. *Northern Pacific Ry. Co.,* 39 Mont. 435, 104 Pac. 549.) So, if he proceeds against all in the same action, but fails to connect any one or more with the wrongful act, his right to recover as against the others is not thereby impaired. The case of *Forsell* v. *Pittsburg & Montana Co.,* 38 Mont. 403, 100 Pac. 218, cited by counsel for defendants, is not in point, either by its similarity in point of fact, or in the principle involved. In that case the complaint alleged separate and distinct acts of negligence by the different defendants, by the concurrence of which the injury was done, but without either of which there would have been no injury. Necessarily this re-

quired proof of both concurrent acts, or a recovery could not be had.   Here a single act was done for which it is sought to hold all the alleged participants liable.

4. Evidence was admitted as a part of plaintiff's case in chief that McDonald and Vivian had appointments as special deputies by the sheriff of Silver Bow county, made at the request of the company, through the manager, Wharton, so that they could make arrests when occasion demanded, and that they were paid by the company.  Defendants objected that it was immaterial; and it is argued that its admission was prejudicial error, because it is alleged and admitted in the pleadings that they were special deputies, and, being such, it was wholly immaterial at whose instance they had been appointed or who paid them for their services.   It was not material to plaintiff's case to show that they were special deputies, or that they were paid as such by the company.   To connect them with the company and show its responsibility for their acts, it was only necessary for the plaintiff to show that they were employed by the company in the capacity of trainmen and worked as such.   In so far as the evidence tended to show that they were also public officers, it was, at the time it was introduced, immaterial; but, in so far as it tended to show an employment by the company, it was pertinent and material, because, under the operation of the maxim *respondeat superior,* it tended to show the relation of master and servant between them and the company, and hence to fasten liability upon the company.   In any event, the fact of their appointment, and their employment and payment by the company, was subsequently proven or admitted by the defendants; therefore, even though it be conceded that it was error to admit the evidence in the first instance, such error was cured by its subsequent admission.

5. In the first paragraph of the charge, the court undertook to state to the jury the issues made by the pleadings.   The first part of the paragraph states substantially the allegations contained in the complaint.   It then proceeds: "The defendants deny certain of these allegations, and further set up a

defense that, while plaintiff was at said place, he conducted himself at said time and place, in the presence of a large number of women and children, in a boisterous, offensive and disorderly manner; that he used at said time and place foul and unseemly language, and was so offensive in his manner, conduct and language that the said Vivian and McDonald, who it is alleged were deputy sheriffs, removed the plaintiff and sought to place him on board of one of the defendant railway company's cars. You are instructed that the burden of proof is on the plaintiff, and the plaintiff must prove by a preponderance of the evidence all the allegations of his complaint denied by the defendants.''

Complaint is made that this portion of the charge was prejudicially erroneous, in that it failed to point out to the jury what allegations in the complaint were put in issue by the answer, thus omitting to state definitely what issues were actually to be tried. In *Paxton* v. *Woodward*, 31 Mont. 195, 107 Am. St. Rep. 416, 78 Pac. 215, it was said: ''While the jury may be permitted to take with them to the jury-room the pleadings in the case and study the issues for themselves, the practice of setting forth in the instructions a clear and concise statement of the nature of the case and the issues to be determined is to be commended.'' This course would seem to be the better one; for it is often difficult for the trial judge to make a clear definition of the issues, and for this very reason, if for no other, it ought not to be left to the jury to ascertain them from an examination of the pleadings or from the controversy in the evidence, and the statements of counsel during the trial. And if the court undertakes to include in its charge a definition of them, the statement should be definite and complete. (1 Ency. of Pl. & Pr. 155, 156, and notes.) Testing the foregoing paragraph of the instruction by this rule, it is clearly insufficient, for the reasons stated by counsel; and, if it were the only guide which the jury had before them, it would warrant the granting of a new trial. When we examine the rest of the charge, however, we cannot see how the jury could have misunderstood.

the issues submitted to them. It was the theory of counsel for plaintiff that he was entitled to recover upon a showing that he was, at the time of the assault, a passenger of defendant company.; that the defendants McDonald and Vivian were in its employ; that Wharton was the general manager of its business; and that Wharton and McDonald and Vivian all participated in the maltreatment of the plaintiff, without cause or excuse, while they were acting for the company. The fact that the defendants McDonald and Vivian held appointments from the sheriff as special deputies, they insisted, was not conclusive of the right of their client to recover as against the company, but that he was still entitled to recover, as against it, if upon the evidence as a whole it appeared that at the time the wrong was done, McDonald and Vivian were acting for it, and that Wharton participated in the wrong. The theory of defendants was that McDonald and Vivian were public officers, and that the company was not liable for their acts, and hence that Wharton could not be held responsible unless the deputies, in undertaking to eject the plaintiff from the Gardens by forcibly putting him on the car for his return to the city, used more force than was necessary, and that he directed and aided them. We shall not undertake to review the charge as a whole in order to point out the particular paragraphs which define the issues. We content ourselves with the general statement that it was so formulated as to submit the cause fully and fairly upon all the issues—in fact, so fully and fairly that we cannot see how the jury could have been mistaken as to their duty under it.

Complaint is also made that the court erred in failing to define the expression "preponderance of the evidence," used in paragraph 2 of the charge; and counsel cite *Shane* v. *Butte Electric Ry. Co.*, 37 Mont. 599, 97 Pac. 958, and *First Nat. Bank* v. *Carroll*, 35 Mont. 302, 88 Pac. 1012, as authority in support of their contention that the omission constitutes reversible error. In the former of these cases it was held that in an action for damages for personal injuries a requested instruc

tion, defining the expression "proximate cause," should have been given. In the latter, which was an action for damages for a breach of contract, it was held that such terms as "actual," "remote," and "speculative," as applied to the term "damages," should have been defined, so that the jury would have a safe guide in ascertaining the amount of their verdict. In neither case was it held reversible error to fail to define such terms, in the absence of a specific objection and a request by counsel with tender of an instruction embodying the desired statement. And this court has repeatedly held that where an instruction is indefinite or not sufficiently specific, but correct as far as it goes, the judgment will not be reversed and a new trial ordered on account of it, unless at the time of the ruling counsel formulated and submitted to the court an instruction drawn in conformity with their wishes, with the request that it be given. (*Mulligan* v. *Montana Union Ry. Co.*, 19 Mont. 135, 47 Pac. 795; *Hamilton* v. *Great Falls St. Ry. Co.*, 17 Mont. 334, 42 Pac. 860, 43 Pac. 713; *State* v. *Broadbent*, 19 Mont. 467, 48 Pac. 775.) Furthermore, the terms "actual," "remote," and "speculative," and the expression "proximate cause," as used in the cases cited, are technical and difficult to understand and apply, even by persons more or less learned in the law, whereas the expression "preponderance of the evidence," is of frequent use in common speech, and its meaning and application may be said to be understood by the man of average intelligence and experience. It therefore may be left to the trial judge to determine whether a particular jury is composed of men whose intelligence may or may not require a special definition of this and like expressions which are in common use.

In paragraphs 3 and 4 of its charge, the court instructed the jury, in substance, that when one enters upon the depot grounds of a common carrier by the usual means of access thereto, with the intention in good faith to take passage on a car, he is a passenger, whether he has actually paid his fare or not; that where the carrier conducts its or his business through agents, servants and employees, the duty of protection must be dis-

charged by such agents, servants and employees; and that if any agent, servant or employee, while in the discharge of his duty, assaults a passenger or otherwise violates the right of protection to which he is entitled, the carrier is liable for the injury so done. Paragraph 7 is as follows: "You are instructed that for the breach of an obligation, not arising from contract, the measure of damages is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." That these are correct statements of law, counsel do not question. It is argued, however, that paragraphs 3 and 4 are based upon the theory that the action is one for breach of the contract between the plaintiff, as a passenger, and defendant company, as a carrier; while paragraph 7 is based upon the theory that the action is one for damages for a tort, and hence that the court confused the jury by adopting the two inconsistent theories. There is no merit in this contention. If the plaintiff had not become a passenger, the defendant company owed him no duty during his presence upon its premises; nor did its servants or employees owe him any duty, other than to abstain from inflicting upon him willful or wanton injury. If he had become a passenger, then the duty of protection was imposed by law, as incidental to the contract. Redress for any wrong done him by defendant company or its servants could be had by him either by action for damages for breach of the contract of carriage, or in tort for the omission of the incidental legal duty of protection. (*Nelson* v. *Great Northern Ry. Co.*, 28 Mont. 297, 72 Pac. 642.) The cause of action stated in the complaint is for the wrong done, and not for a breach of the contract. Paragraphs 3 and 4 correctly state how the relation of carrier and passenger may be established, and the resultant legal duty; while paragraph 7 lays down the rule as to the measure of damages prescribed by the Code (Revised Codes, sec. 6068).

It is also said that paragraph 4 is prejudicially erroneous, in that neither in it, nor elsewhere, did the court define the expression "the direct and proximate result." What has here-

tofore been said with reference to paragraph 2 of the charge disposes of this contention.

In paragraph 6 the court instructed the jury that if they found from the evidence that the plaintiff had been assaulted and beaten in the manner and form charged in the complaint, and that he sustained damage thereby, it was their duty to assess his damages at such sum as they thought he was entitled to, basing their estimate upon the character of the injury sustained by him, as shown by the evidence, and the attendant humiliation, pain, and suffering. It is said that this statement leaves out of consideration the question whether there was justification for the acts of McDonald and Vivian, as alleged in the answer and which they attempted to sustain by the evidence adduced in that behalf, and amounts to a peremptory instruction to find for the plaintiff, whether he was in the wrong or not. In other parts of the charge, as already pointed out, the court defined fully the relation of defendant company to a passenger and the duty toward him imposed by law as growing out of this relation. It likewise in proper terms left it to the jury to determine whether McDonald and Vivian were acting for the company at the time of the assault, and whether Wharton participated in it in any measure. It told the jury clearly and specifically that if McDonald and Vivian were acting as peace officers, and in view of the behavior of the plaintiff they were required as such, in order to preserve the peace, to take him into custody and eject him from the premises, and they did so, using no more force than was necessary, plaintiff could not recover from any of the defendants. It also further told the jury that it was the duty of the employees of the company, having in charge the conduct of its business, to protect the other passengers from such acts as it was charged the plaintiff was guilty of, and in case he refused to desist when warned, to eject the offender from the premises, using such force as was necessary. In view of these instructions, and the fact that the court, in giving the paragraph complained of, was stating to the jury what elements they should consider in estimating the amount of damages they should award

to plaintiff in case they found that he should recover, the objection urged to this instruction is entirely without merit.

6. The contention is made that the evidence is insufficient to sustain the verdict against the company, and that the court erred in refusing to direct a verdict in its favor. This contention is based upon the assumption that McDonald and Vivian were peace officers in the discharge of their duty, and that the company could not, under the circumstances and for this reason alone, be held liable for their conduct, whether they used more force than necessary in taking the plaintiff into custody and putting him on board the outgoing car, or not. The motion for a new trial in the district court was made jointly by all the defendants. The order denying it was general. The appeal was taken jointly. Under such circumstances we are not inclined to sustain a party who assumes a position in this court antagonistic toward the other appellants. (*Anderson* v. *Northern Pacific Ry. Co.*, 34 Mont. 181, 85 Pac. 884.) But waiving aside this consideration, we do not think that the facts presented in the evidence justified the trial court in assuming, as a matter of law, that the company was not responsible for the acts of McDonald and Vivian. If they used more force than was necessary, and injury resulted, they were liable. So was Wharton, if he acted with them; and this without reference to the connection of any of them with the company. The jury evidently found the issue on this point against them. They were all regularly employed by the company and were engaged in the conduct of its business. McDonald and Vivian were not regular deputies. The evidence shows beyond question that they were made deputies, so that they would be able to enforce order by a show of legal authority while engaged in the discharge of their ordinary duties as employees of the company. It justifies the finding that at the time they put the plaintiff on the car they were acting under the direct orders of Wharton. We understand the rule of law to be that a public officer cannot engage as such to guard the property of a private individual or corporation, and that the latter cannot claim freedom from liability for his wrongful acts while

engaged as its trainman or in other like capacity, on the ground
that he is a public officer.   If the wrong was done by the officer·
as such, his employer is not liable even if he exceeds his author-
ity; but if it is done during the course of his duty as employee,.
then the employer is liable even if it is done in excess of au-
thority; and it is generally a question for the jury to deter-
mine, upon all the evidence, the capacity in which the wrongdoer
was acting at the particular time.   This rule finds support in
the following authorities: *St. Louis etc. Ry. Co.* v. *Hackett,* 58·
Ark. 381, 41 Am. St. Rep. 105, 24 S. W. 881; *Brill* v. *Eddy,*
115 Mo. 596, 22 S. W. 488; *Krulevitz* v. *Eastern R. R. Co.,* 143·
Mass. 228, 9 N. E. 613; *Hirst* v. *Fitchburg & L. St. Ry. Co.,*
196 Mass. 353, 82 N. E. 10; *Duggan* v. *Baltimore & Ohio R. R.*
*Co.,* 159 Pa. 248, 39 Am. St. Rep. 672, 28 Atl. 182, 186; *Gilling-*
*ham* v. *Ohio River R. R. Co.,* 35 W. Va. 588, 29 Am. St. Rep.
827, 14 S. E. 243, 14 L. R. A. 798; *Dwinelle* v. *New York Cent.*
*R. R. Co.,* 120 N. Y. 117, 17 Am. St. Rep. 611, 24 N. E. 319,.
8 L. R. A. 224; *Dickson* v. *Waldron,* 135 Ind. 507, 41 Am. St.
Rep. 440, 34 N. E. 506, 35 N. E. 1, 24 L. R. A. 483, 488.   "It
is no uncommon thing for corporations and individuals to em-
ploy duly appointed police officers to watch their property; and·
if such an officer so employed make an arrest for disorderly·
conduct, the presumption is that he acted in his official capacity
as the agent of the state, and not as the agent of his employer.
Being an officer whose duties are prescribed by law, it should be
presumed, until the contrary is made to appear, that his employ-
ment contemplates only the exercise of such powers as the law
confers upon him.   *   *   *   The presumption is, however, one·
of fact, and it may be shown that in making the arrest he acted
under orders of his employer, in which event the employer would·
be liable for the unlawful act of the officer."   (*Brill* v. *Eddy,*
*supra.*)

From the evidence it appears that when the game was over;.
and the people assembled at the platforms of the company to
take the outgoing cars, there was a great deal of pushing in the·
crowd to catch the first outgoing cars.   Complaint was made by.

someone that plaintiff was doing some of the pushing and was using obscene and profane language. There is room for question whether the plaintiff was pushing intentionally, or whether he was himself being pushed by others behind him. There is some evidence tending to show that he was intoxicated. That he was in this condition or was using unseemly language is controverted. McDonald and Vivian, acting upon the supposition that he was intoxicated, took him out of the crowd and across the track to another platform where there were fewer people, intending, as they testified, to hold him there until the crowd had thinned out somewhat and then to send him to the city. It does not appear whether they intended to file charges against him or whether they intended to release him. It is stated by some of the witnesses that while they had him in charge, they beat him with their canes or billies, to such an extent as to call forth remonstrances from some of the persons who were looking on. In any event, the plaintiff struggled to get free from them. Wharton was present looking after the coming and going cars. Finally the plaintiff broke away and started down the track, saying that he was going to see Wharton, presumably for the purpose of making complaint to him of the conduct of McDonald and Vivian. When he finally reached the presence of Wharton, the latter said that he had no time to talk to a drunken man and ordered McDonald and Vivian to put him upon an outgoing car in charge of a policeman, with directions to the latter to see that he reached the city, and to release him when he did so. Some of the witnesses testified that Wharton assisted McDonald and Vivian in putting plaintiff on the car, some one of them kicking him from behind as they proceeded toward it. The evidence is somewhat in confusion, leaving it in doubt whether the injuries received by plaintiff were the result of the beating by McDonald and Vivian, or of the rough handling by them and Wharton as they were conducting him to the car and putting him on board. There is no question that when he was finally put on board and in charge of the policeman, he had several cuts and bruises upon his face and head and his nose badly

broken, in which condition he was conducted to the city and released. His wounds were dressed by his own physician, who then sent him home, where. he was confined to his bed under medical treatment for several weeks. The evidence as to what occurred is exceedingly conflicting in all of its material aspects, except as to the fact that McDonald and Vivian actually took plaintiff in charge and held him until they were directed by Wharton to put him on board the car, and as to the character and extent of the injuries he suffered.

Under the rule heretofore stated, we think it was a question for the jury to say whether McDonald and Vivian were acting as public officers, or under the orders of Wharton, as employees of the company. If the plaintiff was guilty of the conduct ascribed to him by the defendants, he was guilty of a misdemeanor, under the statute (Revised Codes, sec. 8577), and was subject to arrest by any officer who was present, even without a warrant (Id., sec. 9057). But, even so, no more force could be used than was necessary to accomplish this purpose; and it was for the jury to ascertain what the facts were.

7. It is contended that the verdict is grossly excessive. With this contention we do not agree. Taking the testimony of the plaintiff and his witnesses as true, as the jury found, the plaintiff was arrested without fault on his part, and seriously injured by the beating and rough treatment to which he was subjected. Under these circumstances the award of the jury evinces a spirit of conservatism, rather than of passion and prejudice.

Of the several other assignments urged by counsel, we find none of sufficient merit to demand special notice.

The judgment and order are affirmed.

*Affirmed.*

MR. JUSTICE SMITH and MR. JUSTICE HOLLOWAY concur.